Abner Hill et al. appellees *vs.* The Town of Sunderland appellants.

The section of the statute of 1828, which allows an appeal from decisions of the road commissioners, made before the passing of said statute is unconstitutional and void, as respects the damages and costs awarded to individuals.

The appellees were petitioners to the road commissioners for the laying out of a public highway through the town of *Sunderland*. The highway was laid out, and cost taxed in favor of the petitioners against the town of *Sunderland*; and the survey of the road was regularly recorded. All this was done as early as September, 1828. On the thirtieth of October, 1828, the legislature passed an act, allowing an appeal, in certain cases, from the decisions of the road commissioners; and one section of the act allowed an appeal from decisions already made, if applied for within ninety days from the passing of the act. Under this section, the select men of *Sunderland* entered their appeal to the county court. The counsel for the appellees filed their written motion, praying the county court to dismiss the appeal, and take no further cognizance of it. The county court overruled this motion, and appointed a committee under the directions of said new act, and according to the request of said appellants. The appellees filed exceptions to this decision, which were allowed, and the question directed to pass to the Supreme Court for a rehearing.

*The counsel for the appellees.*—1. By the act of 1827, the commissioners are required to make personal inspection of the subject matter of the petition, and "to adjudicate and make order thereon, *which shall be final and conclusive; and to tax costs for the successful party*," and issue execution therefor. The adjudication and decision of the commissioners laying the road, their assessment of damages, their taxation of cost, indeed, all their acts, under this statute,

Bennington,
February,
1831.

Hill et al.
vs.
Sunderland.

were final and conclusive. By these proceedings of the commissioners, the several land owners were immediately vested with a right to recover their damages, the petitioners freed from a liability for costs, and vested with a right to the costs taxed, and *Sunderland* charged with the payment of these damages and cost. By the law then in force these rights and liabilities were *conclusively fixed*.

2. Any act, subsequently passed, authorizing these rights to be divested, is retrospective in its operation and void.—*Bates* vs. *Kimball*, 2 *D. Chipman's Rep.* 77 ; 7 *Johns. Rep.* 502 ; 2 *Aikens' Rep.* 284. The effect now attempted to be given to the act of 1828, we claim, comes within this principle. And, in this respect, it is analogous to acts granting appeals and new trials in special cases, where, by the general law, no such rights existed. —See 1 *N. H. Rep.* 199.

3. But it has been said, that, though the legislature could not, by a subsequent act, divest individuals of rights acquired under the act of 1827, yet, so far as the interest of the public is concerned in the right of way, and in the continuance of this *easement*, effect may be given to the act of 1828, in this case. Grant that the *easement* is at all times under the controul of the public, and may at any time be discontinued at their option ; still it is perfectly apparent, that a bare discontinuance of the *easement*, was not the object of the act of 1828 ; and, as we think, cannot be its effect. This could have been done, by calling out the commissioners in the ordinary course of proceedings, for that purpose ; or, perhaps, by an act of the legislature, going only to a discontinuance of the public highway. The object of calling out the committee under this appeal is, to *revise the adjudication and decision* of the commissioners, and to affirm or reverse it as they shall think the public good requires. The committee, on appeal, are required by the act, " *in all cases to tax cost to the successful party.*" In case of a reversal of the decision of the commissioners, the committee must therefore tax costs against the petitioners, who were before entitled to costs. And the necessary consequence of such reversal must be, to *vacate* and *annul* the judgement of the commissioners, awarding damages to the land owners and costs to the petitioners. Another consequence of such reversal would be to protect *Sunderland* from paying damages and costs, assessed and taxed by the commissioners, if not paid, and to entitle the town to recover back the monies if collected.—*Feltham* vs. *Terry, B. N. P.* 131 ; *Cowp.* 416 ; and 1 *D. & E.* 387 ; *Lazell*

vs. *Miller*, 15 *Mass. Rep.* 207.   These, at any rate, would be the legitimate consequences of a reversal on an appeal taken from the decision of commissioners, made since the passing of the act of 1828 ; and we cannot perceive why they would not be in the present case.   But one course of proceeding is pointed out for the two cases.

It is further to be remarked, that the public has no pecuniary interest whatever in this proceeding.   The only certain interest is between the *parties ;* to wit, the *petitioners* and the *town* of *Sunderland.*   In a certain event the land owners acquire a *pecuniary interest* in the proceedings.   And here the event had happened, and the interest accrued, prior to the appeal.   We think it quite clear, that this appeal cannot be sustained, so as to divest and jeopard the *vested pecuniary* interest ; and in what way these rights shall be secured, and the appeal permitted to go on, so that it shall affect the public interest, alone, without touching the private rights, we are unable to devise.

*The counsel for the appellants, contra.*—It will probably not be denied, that the whole subject of public highways is exclusively under the control of the state ; and that, in all cases, the legislature has power, either directly, or through the instrumentality of its agents, to direct the laying, opening, repairing, making and discontinuing, any and every highway in the government.   No one can doubt but this authority must rest somewhere ; and where will it be found if not in the legislature ?   The public roads, which have, at any time, been laid under the authority of the legislature, are constantly and daily altered and discontinued, under the same authority ;   and no one ever doubted the right.   If roads, already laid, made and improved, may be thus altered or discontinued, surely such, as have not been made, may be discontinued and forborne.   As to the form or manner of effecting this end, it cannot be material, whether it is done by petition direct to the court for that purpose, or by appeal from the road commissioners.

It may be urged, that the cost allowed and taxed by the road commissioners, and the damages assessed to the proprietors, through whose land the road is laid, were, by the decision of the road commissioners, according to the then existing law, finally determined, and that no subsequent statute can affect them.   We submit, whether the right of the petitioners and proprietors, arising under the decision of the road commissioners, is involved in the question before the Court.   The commissioners are presumed to

BENNINGTON,
February,
1831.

Hill et al.
vs.
Sunderland

have done their duty, in making orders for damages, and issuing executions for costs—and whether, if the money has been paid, it may be retained, or, if not paid, it may be recovered, may or may not be the subject of future enquiry between the parties.

Admitting the legislature have not the power to vacate the orders or the executions, or to direct the money refunded, if paid, (upon which, it is to be noticed, the act is entirely silent,) yet there can be no objection to the appeal. If the town be remediless, as to their damages and costs, and are disposed to submit to this evil, they ought not to be deprived of the privilege of attempting to show the injustice of subjecting them to a greater evil, in being compelled to make, and maintain, a useless road. But, if the consequences should be otherwise, it is insisted that the law is not unconstitutional, as opposed to the construction of this or the U. States.

It is not an *ex post facto* law, in as much as the subject matter has no reference to crimes and misdemeanors. It is not a law *impairing the obligation of contracts* ; as no contract can be affected thereby. It is indeed intimated, in the opinion given in the case of *Bates* vs. *Kimball, 2 D. Chip. Rep.* 77, that a judgement of a court is a contract of the nature contemplated in the constitution. This is unsupported by any authority, and opposed to the opinions of the most enlightened jurists. The decision, in that case, does not rest upon that ground. That principle is not alluded to in the case of *Staniford* vs. *Barry.* The term *contract,* in the constitution, is to be understood in its ordinary acceptation, and may apply to covenants, agreements, grants and undertakings, in which the mind and will of the parties are supposed to have been exercised. Chief Justice *Marshall* and judge *Washington* define it to be *a compact between two or more parties.* It is not perceived how the act in question can be regarded as the exercise of judicial power, or of individual legislation ; *that is,* an attempt to give to, or take from, particular individuals, rights and privileges to the exclusion of all others in like circumstances   The law is general in its application to all cases of the like nature existing in the state. Is the act retrospective in its operation, and are vested rights thereby changed or affected ? Although some acts, having this effect, have been severely censured by judges of courts, yet, it is believed, no case is to be found, in which a statute has been held void upon this principle alone. Neither the constitution of this state, nor of the U. States, imposes any restraint upon the legislature in this partic-

BENNINGTON,
February,
1831.

Hill et al.
vs.
Sunderland

ular.  Many laws of this character are to be found in every stat-ute book, and some the most salutary.  No restraint of this kind would be safe.  The people have left the subject to the discretion of their representatives.  If the law is general in its operation, not confined to individual rights in the nature of a sentence, order or decree, there can be little danger of oppression.

The following are some of the acts of this description, and have never been questioned, and by which courts have been uniformly governed.  The statute of 1797, converting all joint tenancies into tenancies in common.  The statute of 1823, authorizing the discharge of persons imprisoned for tort.  All the acts relating to betterments.  The act of 1804, directing recording officers in their office and duty.  The various acts, legalizing the proceedings of public officers.  The statute of 1809, suspending process, &c., *page* 103.  The statute of 1822, authorizing reviews, &c., 2 section.—4 *Con. Rep.* 209, *Goshen* vs. *Stonington.*

[A case was argued in Addison county, and one is pending in Windham county, in each of which the same question, of constitutionality of this section of the statute, is raised ; and the Court concluded to postpone a decision in each till all were argued.  The one at Windham county was argued during the following week; after which the justices, all being together at Woodstock, arrived at the conclusion contained in the following opinion, WILLIAMS, J., dissenting.]

HUTCHINSON, C. J.—It is a conceded point, that public highways, so far as regards those interests, which are common to all the citizens, are subject to the control of the legislature, and may be altered or discontinued by force of statutes, from time to time enacted.  But the appellees contend, that their individual interests are affected, in this case, and, therefore, that the section in question has an unconstitutional operation upon these interests.  The parties, in argument, *seem to consider this section* necessarily either constitutional and binding, or unconstitutional and void.  This view is correct, if there is no distinction in the cases, upon which it may operate.  That is, if all these cases alike involve the interests of individuals, or alike the interests common to community.  The road commissioners have no power to lay out a road, till they receive a petition for that purpose, signed by a given number of freeholders.  Then a citation issues to, and is served upon, the towns interested, or who would be liable to make the road, if laid out by the commissioners.  The commissioners in-

BENNINGTON
February,
1831.

Hill et al.
vs.
Sunderland

spect the rout, and decide, whether to lay out the road or not. If they lay it, they tax costs for the petitioners against the towns, and issue execution for the same. If they decide not to lay the road, they tax costs for the towns against the petitioners, and issue execution for the same. Again, if they establish the road, they make order for the towns to make and open the same by a given time. If not then made, they fix the sum necessary to be expended in making the road, and issue execution for the same. Again, if they assess damages for any individual, through whose land the road runs, they make order for the town to pay it, and, if necessary, issue execution against the towns for the same, in the same manner as the county courts could before do in cases before them. And whatever the road commissioners do in all these particulars, under the statute of 1827, is final and conclusive. The words of the second section are very emphatical. "The said road commissioners shall make personal inspection of the subjects of the petition made to them, and adjudicate and make order thereon, which shall be final and conclusive, and shall tax costs for the successful party, in the same manner as are now taxed by the county court, and issue execution therefor; and all orders, judgements, assessments of damages, and taxation of costs, by said road commissioners on petitions before them, shall be as conclusive as could, heretofore, be made by the county court."

Under the faith of this statute, the appellees became petitioners for the laying out of a road; the road commissioners proceeded regularly, and laid out and established the road, according to the prayer of the petition; and taxed costs for the petitioners against the town of *Sunderland*, and, also, made an order for said town to open and make said road by a given time. These proceedings all appear regular, and were all completed as early as September, 1828. The appellees were then as fully entitled to their execution for their costs, as if they had recovered the same before the county court, and they were, also, as fully absolved from all liability to pay costs to the town, as if they had such judgement in their favor before the county court, under the former system. On the thirtieth of October, 1828, the act passed under which this appeal was taken. The statute gives no appeal to the petitioners if they be ever so much aggrieved; but makes a general provision for towns, that may be dissatisfied with the laying of the road, and the individuals aggrieved by the assessment of damages, to appeal, within twenty days, to the county court, who shall, at their first session, appoint a committee of three

judicious and disinterested freeholders, who shall be sworn, &c. This statute points out the duties and powers of this committee, which, so far as pertinent to the case under consideration, are as follows : " They shall have power to reverse or affirm the decision of the road commissioners, as the public interest shall require ; and in all cases of an appeal, their decision shall be final ; and they shall tax cost for the successful party." Then, in the sixth section, this statute gives the same right to either party, to appeal in all cases, where roads had then been laid under said act of 1827, and had not been made ; provided, said appeal be applied for within ninety days after the passing of said act.

Under this statute, which clearly undertakes to give the right in a case like the present, the town of *Sunderland* took this appeal. And, if the committee, appointed by the county court, should reverse the proceedings of the road commissioners, and if this statute is operative as applied to such case, instead of the appellees collecting and retaining the costs awarded them by the road commissioners, the town of *Sunderland* must recover their costs against these appellees. The effect of the statute would then be, to provide a course of proceedings, by which a judgement, final and conclusive between the parties long before the statute had existence, might be reversed, and the opposite party recover costs. The very supposition, that a statute could have such a deleterious effect to unsettle controversies, long settled according to existing laws, exhibits the doctrine of nullification in a form by no means pleasant or useful. As well might a succeeding legislature create a statute provision for the proceedings of this last committee, long before rendered complete, to be carried before the Supreme Court, for the appointment of another committee with dernier powers of reversal. I ought not to use the word *dernier*. Upon this principle, nothing would be. dernier, but the loss of faith in our government. From this there would be no appeal, that would restore the confidence of our citizens. As well might the legislature have passed a law, at the same session, granting new trials, before new panels of jurors, in all actions tried by jury, for the year next preceding. The judgements, in all those cases, were no more final between the parties, than was this judgement in favor of the appellees, and against the town of *Sunderland*, for their costs. We might say the same of all judgements, rendered by single magistrates, in any given year : so of all judgements rendered by any courts whatever ; and that, whether on trial or by default. The truth is, there must be an

PPP

BENNINGTON,
February,
1831.

Hill et al.
vs.
Sunderland

end of strife, somewhere. And where will it be, if not when a judgement is recovered, which is final by the laws then existing? What, indeed, makes a judgement final, but its being declared so by the laws then existing? Now the terms of the road commissioner act, of 1827, render their doings under it as final and conclusive, as any laws whatever render the judgements of the county court, or even of the Supreme Court. Upon the faith of this statute, the appellees became petitioners before said commissioners, which, in a very substantial sense, was commencing an action against the town of *Sunderland*. This, while no other law intervened, they prosecuted to final judgement. They might well rely upon the faith of government to protect this judgement, when obtained. They might well rely upon the stability of our judiciary, to protect such a judgement against any later statute, so framed as to effect it.

In this Court, at several different periods, the cases cited, of *Bates* vs. *Kimball*, and *Ward* vs. *Barnard*, and *Staniford* vs. *Barry*, and others not reported, adopted the same principle; though they differed in this, that the statutes then in question were made for the particular cases, and were not general laws. Still the grand principle relied on was, that those statutes affected individual rights, already so established, that the legislature could not intermeddle with them. Statutes, which grant individual relief, are not, for that reason, void. It is their taking rights from other individuals, that renders them void. A general statute, with this effect, is void also.

Had this statute only made provision for the discontinuing of this road, on the terms of the costs taxed for the appellees being paid, and the appellants, recovering no costs, its operation would have been to affect the public, and the appellees as a portion of the public, on one part, and the town of *Sunderland*, on the other. No individual could complain that his private interests were invaded. But, in this case, if the new committee decide favorably to the appellants, the law attaches the consequence, that the appellees lose the costs they had fairly recovered, and must have execution against them for the costs of the other party.

The road commissioners always have power to discontinue a road, in the cases within their jurisdiction; but, in doing this, they cannot reverse their former decision with regard to costs. They can relieve the town from the claim of the public, but cannot discharge the debts the town may owe individuals, without providing for their payment. Much more is it out of their power, to turn those debts about, and make them become debts due from those

BENNINGTON,
February,
1831.

Hill et al.
vs.
Sunderland

individuals to the town. The statute of 1828 undertakes to give these extraordinary powers to the new committee. This is not the proper business of legislation ; it exceeds the authority of the legislature. I have no idea that the legislature intended to convey such power. While they intended this new committee should have power to act between the public and the several towns, with regard to the road itself, they, probably, lost sight of the consequences to individuals, which the former part of the act attaches to their doings, in cases then past. Those who made application to the road commissioners to lay out roads, after the act of 1828, knew they were subject to this right of appeal; and it is what they must risk. But not so of those, who made their application, and got their business completed, while there was no such statute.

The observations apply with equal force, *mutatis mutandis*, to appeals from the assessment of damages. A landholder appeals for the purpose of obtaining higher damages. This claims a new decision upon the same question decided by the commissioners, at a time when no appeal was allowed, and when the statute, then in force, made the decision as final as can be made by any statute. In such a case, the town have a right to object to the operation of such a new statute.

The reasoning here adopted necessarily leads to the conclusion, that the judgement of the county court, which overruled the motion of the appellees to dismiss the appeal, and appointed a committee under the act of October 30, 1828, must be reversed and holden for nought; and

The appeal must be dismissed.

WILLIAMS, J., dissented.

*Bennett & Aiken*, for appellees.
*Skinner & Sargeant*, for appellants.