**Amasa B. Gibson, Administrator of Emma E. Howells, v. Daniel B. Hibbard.**

*The Stamp Act.*—A person being the holder of a draft drawn in August, 1863, made a gift of it, *causa mortis*, to her mother, and, after her death, her administrator, treating the draft as void for want of requisite stamp, brought

suit against the drawer for the original consideration. The drawer, defending in the interest of the donee, produced the draft on the trial and placed the requisite stamp upon it in pursuance of the act of Congress of June 30, 1864; — *Held,* That the draft was thereby rendered valid from its date, thus making said gift effective, and that plaintiff could not recover.

*Right to avoid one's contract, not property — Stamp Act.* — The right to avoid one's contract because of his own non-compliance with a statutory requirement, cannot be considered as property, and hence said act of Congress permitting a stamp to be affixed to an instrument subsequent to its execution, thereby rendering it valid, is not void as being in conflict with the provision of the constitution which forbids that any person shall be deprived of property, etc. except by due process of law.

*Heard April* 13. *Decided April* 26.

Error to Jackson Circuit.

The facts will be found sufficiently stated in the opinion of the Court.

*Johnson & Higby,* for plaintiff in error:

By the laws of Congress the check in question required a three cent stamp, and not being so stamped, it was void.

And the first question is whether the giving of the paper by the deceased was a good gift — *causa mortis.*

One of the requisitions of a gift *causa mortis* is, that the subject of the gift should be delivered. And a draft, note or bond is upheld as a gift, because they operate as an assignment of the money secured, and furnish the *means* of obtaining it; but the check in question being void at the time of the gift, for want of a proper stamp, it neither operated as an assignment of the debt, nor did it furnish the means of obtaining the money. — *Harris v. Clark,* 3 *N. Y.,* 93; *Parish v. Stone,* 14 *Pick.,* 198; *Craig v. Craig,* 3 *Barb., Ch. R.,* 76; *Fink v. Cox,* 18 *J. R.,* 145; *Ward v. Turner,* 2 *Vesey Sen.,* 431; *Miller v. Miller,* 3 *P. Wms.,* 356; *Duffield v. Elwes,* 1 *Sim. and Stew.,* 243; *Noble v. Smith, et al.,* 2 *J. R.,* 52.

The next and only other question in this cause, is, what was the effect of affixing a stamp on said check at the trial of the cause?

The one hundred and sixty-third section of the act of Congress approved June 30th, 1864, provides, in substance, that no writing which had been theretofore signed or issued without a stamp, or with an insufficient stamp, should be used as evidence until a legal stamp shall have been affixed, and the person desiring to use such writing in evidence is authorized to affix the stamp required.

It is conceded. that the check in question comes within the provisions of this law, and could be made a valid instrument by affixing a proper stamp. But we submit that it would not . have the effect to change the title. If it belonged to Mrs. Tyson after the stamp was affixed, it was hers before. And if it was hers before, it became so by virtue of the gift, or by virtue of the foregoing enactment.

We have attempted to show that nothing passed by the gift. The ninety-fifth section of the law of July, 1862, makes all instruments without a proper stamp *invalid, and without effect*, and is distinguishable from the English revenue laws in that respect. — *See Edwards on the Stamp Act, p.* 10.

This check then had no inherent properties at the time of the gift. It had none at the commencement of this suit. Our right of action was then perfect. If we lose our right of action by the act of 1864, it is because that act is to have a retrospective effect, so as to take from us our vested right. If such is the intention of the law, or such its legal effects, it would be clearly unconstitutional. — *See Dash v. Van Vleeck*, 7 *J. R.*, 477.

*Bennett & Bancker*, for defendant in error:

The act of Congress approved June 30, 1864, section one hundred and sixty-three, " Authorizing a proper stamp to be placed on said check," and the law in that respect

having been complied with, renders the check valid from its inception.

This act not only provides that instruments un-stamped, or with deficient stamps, shall not be used in evidence until properly stamped, but also provides that no instrument, document or paper, made, signed, or issued prior to the passage of this act, without being duly stamped shall for *that cause,* if the stamp required be subsequently affixed, be deemed invalid and of no effect.

It is a general rule that penal and revenue acts are to be construed strictly — a *liberal* interpretation being given to words of exception. — *Edwards Stamp Act, p.* 12.

The interpretation ought to be dependent upon and have regard to the obvious meaning and intention of the Legislature. — *Ib. p.* 13, *and cases cited.*

With such construction, and by fair intendment, we deem the conclusion of the above proposition fully war-ranted, and the decision that, "If an instrument is properly stamped after proceedings have begun it will be good, *ab initio*," contained in *Brown v. Savage,* 5 *Ju-rist, N. S.,* 10, 20 *ed. Stamp Act,* 237, applies.

By an examination into the *occasion* of the passage of the act of Congress of June 30, 1864, two conclusions appear: 1. That the statute was intended to remedy the injurious operation of the previous rule declaring un-stamped paper invalid; 2. That to give the statute a different construction than that claimed in our second proposition, would be necessarily productive of practical inconvenience to the community, and therefore to be rejected.

The act is remedial and should be construed favor-ably.

COOLEY J.:

Emma E. Howells being the holder of a draft drawn by defendant on a banking firm in Jackson for $600 at

thirty days, dated August 10, 1863, made a gift of it *causa mortis* to her mother, Mrs. Tyson, the validity of which is disputed on the ground that the draft was void at the time of its inception and of the attempted gift.

At the time it was drawn the draft had placed upon it only a two cent revenue stamp, while the law then in force — 12 *U. S. Stat. at Large, p.* 720, §6 — required one of three cents, and another provision — *Ibid., p.* 475, §95 — made the instrument invalid and of no effect if a sufficient stamp was wanting.

Treating this gift as invalid for the reason stated, and the draft as void, the plaintiff, as administrator of Emma E. Howells, brought this action against Hibbard to recover on the consideration for which the paper was given. Hibbard defended in the interest of Mrs. Tyson, claiming that the debt had been transferred by the gift; and on the trial the draft was produced, a proper stamp placed upon it, and cancelled by defendant's counsel, whereupon the Court rendered judgment for defendant.

The act of Congress of June 30, 1864, — *Laws of* 1863–4, *p.* 305, §163 - - provides that "no instrument, document or paper, made, signed, or issued prior to the passage of this act, without being duly stamped, or having thereon an adhesive stamp, or stamps, to denote the duty imposed thereon, shall, for that cause, if the stamp, or stamps required shall be subsequently affixed, be deemed invalid and of no effect."

It is contended on behalf of the plaintiff that as the draft under the act of Congress was void at the time the gift was made, the gift itself was necessarily void, and could neither operate as an assignment of the debt, nor furnish the means of obtaining the money. This being so, it is urged that the statute subsequently passed cannot constitutionally have a retrospective effect and make the paper good from its inception.

Before we are at liberty to declare an act of Congress invalid when it relates to a subject falling within the province of the National Government, we must find something in the National constitution with which the act comes' in conflict. As the constitution does not prohibit the passing of retrospective laws, except when they are of the class technically known as *ex post facto*, Congress may unquestionably pass them even though private rights are affected thereby, unless they are invalid for some other reason than their retrospective character. Here, however, it is insisted that the act takes away a vested right; and although we are not pointed ·to the clause in the constitution which would be thereby violated, we must find it, if anywhere, in the provision which forbids any person being deprived of property except by due process of law.

The question of the validity of this draft would arise primarily between the drawer and the holder. The drawer might have insisted upon its invalidity if he saw fit to do so. But I do not understand that any person has such a vested right to have his contract declared void for want of compliance with some statutory requisite as will preclude the Legislature from dispensing with the requisite and affirming the contract which he has attempted to make. A right to avoid one's contract because the party himself has neglected to perform the duty he owed to the Government in respect to it is not "property," and the contractor is not in a position to complain, when, for the furtherance of justice, the Government allows the other party to perform the duty and hold him to his contract. Retrospective laws of a similar character are by no means uncommon, and where they only give effect to the intentions of the parties they are not often unjust. — *See Satterlee v. Matthewson*, 2 *Pet.*, 380; *Wilkinson v. Leland, Ibid.* 627.

And it would be difficult to imagine a law of the

kind less objectionable than this. The purpose of the original act was to enforce, by a penalty, the payment of national dues. In many cases the law operated harshly upon persons not yet accustomed to the new mode of doing business. The subsequent act, instead of operating unjustly upon any one, simply relieved the holder of the paper from the penal consequences on the proper stamp being affixed. Instead of being an attempt to interfere with private rights, it was in the nature of a waiver by Government of a penalty which had been affixed for reasons of State policy.

If Congress could lawfully make the draft valid from its inception, the legal consequences must follow as if the proper stamp had then been affixed. The administrator of Emma E. Howells has no more a vested right to insist upon the invalidity of her gift, than Hibbard has to make the same claim in respect to his draft. The act of 1864 is, in its terms, clearly retrospective, and I think it covers the whole case, and renders the decisions, cited to the point that a gift of an invalid paper cannot operate as a transfer of a debt, entirely inapplicable.

I think the judgment of the Circuit Court was correct, and that it should be affirmed with costs.

The other Justices concurred.