TAFT *v.* SIMPSON.[1]

1. DEEDS—VALIDITY—ACKNOWLEDGMENT.

A deed which is good at common law is valid as between the parties, and as against the grantor's heirs or devisees, though the notary did not sign the acknowledgment till after the grantor's death.

2. SAME — OMISSION OF REVENUE STAMP — INTENT — BURDEN OF PROOF.

One who attacks the validity of a deed because of the absence of the required revenue stamp has the burden of proving that the omission was with fraudulent intent.[2]

Appeal from St. Joseph; Yaple, J. Submitted October 4, 1900. Decided November 13, 1900.

Bill by Lydia A. Taft against James Wray Simpson to set aside a deed. From a decree for complainant, defendant appeals. Reversed.

---

[1] Rehearing denied June 24, 1901.

[2] As to effect of omission to stamp an instrument on which the law requires a stamp, or to cancel stamps on such an instrument, see note to *Knox* v. *Rossi*, (Nev.) 48 L. R. A. 305.

*Howard, Roos & Howard,* for complainant.

*Frank E. Knappen* and *Hugh P. Stewart,* for defendant.

HOOKER, J. Seth Taft was the owner of a farm in St. Joseph county, and the father of two children, James H. and Lydia A. Taft, both unmarried, and both well advanced in years. The family lived upon Seth Taft's farm. James H. Taft was engaged in the business of raising Hampshire sheep, and was well to do. He owned a farm, without buildings, across the road from his father's place, which farm his father had given him. In December, 1897, Seth and Lydia Taft went to California to reside, leaving James H. upon the home farm. In the spring of 1898 James H. Taft and his uncle, James Simpson, visited Ireland together. In September, 1898, James was taken with pains in his hip, and his disease was soon after diagnosed as a cancer, and on Tuesday, October 11th, he died, about 3 o'clock in the morning. In the afternoon of the previous day James Simpson went to Mendon, and procured a lawyer, who returned with him, and drew a deed conveying James H. Taft's farm to James Wray Simpson, who is the son of James Simpson. He also made a bill of sale of Taft's personal property to James Simpson, in trust to convert into money, pay his debts and funeral expenses, and the surplus to his father, Seth Taft. These papers were executed by James Taft, and a day or two later the deed was put on record. Lydia Taft filed the bill in this case, alleging that on February 20, 1884, James H. Taft made his will, whereby he bequeathed to her a life estate in all his property, and left the remainder undisposed of, and that the same would descend to her father under the law; that her said father has since conveyed his interest to her, and she has become the owner of and is entitled to said farm. She alleges that, at the time said deed was made by James H. Taft, he was incompetent to make the same, and that it was procured by undue influence; and she prayed that said deed be declared void, and

she decreed to be the sole and absolute owner of the premises. In the circuit court the prayer of her bill was granted.

The question before us seems to be mainly one of fact, and from an examination of the testimony we are convinced that the deed was not procured through undue influence, and that when it was made the grantor was competent to make the same. We think it unnecessary to discuss the testimony, and therefore merely state our conclusion upon the question of fact.

At the time the deed was made, revenue stamps were not at hand, and they were afterwards supplied. The notary omitted to sign the acknowledgment. Both of these deficiencies were made good after Taft's death. It is contended that it was beyond the power of the notary to make a certificate on another occasion, and that the stamp was not legally supplied, and therefore that the instrument is invalid.

Whether the deed was entitled to record or not is immaterial, as the original was produced, proved, and offered by the complainant, and was a good deed at common law. See *Brown* v. *McCormick*, 28 Mich. 215; *Price* v. *Haynes*, 37 Mich. 487; *Taylor* v. *Youngs*, 48 Mich. 268 (12 N. W. 208).

There is nothing in the case to indicate a fraudulent intent in the omission of the stamp. Under the former revenue law it was held by the great weight of authority that such intent must be shown by one seeking to have the instrument held invalid. See Ash's Ann. Int. Rev. Laws, pp. 375, 376. See, also, *Gibson* v. *Hibbard*, 13 Mich. 214. We see no reason why the same rule should not be applied under the present law.

The decree of the circuit court is reversed, and the bill is dismissed, with costs of both courts.

The other Justices concurred.