LOHRSTORFER *v.* LOHRSTORFER.

Constitutional Law—Vested Rights—Dismissed Appeal—Reinstatement.

Act No. 15, Pub. Acts 1905, so amending section 552, 1 Comp. Laws, as to provide that where a chancery appeal shall have been dismissed, " either before or after" the passage of the act, for nonpayment of the register's fee, the Supreme Court may reinstate it on a proper showing, is unconstitutional as applied to appeals dismissed before its passage, because of interference with the vested right conferred by the decree appealed from.

Bill by Alice N. Lohrstorfer against Frederick Lohrstorfer for a divorce. There was a decree for complainant, and defendant took an appeal, which was, on complainant's motion, dismissed: On petition to reinstate said appeal. Submitted March 21, 1905. (Calendar No. 20,447.) Denied June 29, 1905.

*Hovey & Stockwell* (*Avery & Walsh,* of counsel), for the motion.

*Lee & Parker.* (*Moore & Brown,* of counsel), contra.

Blair, J. A decree for a divorce from the bond of matrimony was granted in favor of the complainant in this cause. The defendant took all of the steps necessary to perfect an appeal from the decree, except that he did not pay to the register the $5 fee for making his return until after the expiration of the 30 days within which the statute requires its payment. For this reason the appeal was dismissed by this court on motion of complainant's solicitors, and thereupon a motion was made on behalf of defendant to reinstate his appeal, on the ground that complainant's solicitors had waived the right to insist upon a dismissal of the appeal. This application was denied.

After the foregoing proceedings were had, the legislature enacted Act No. 15 of the Public Acts of 1905, which was given immediate effect, and was approved by the governor on March 10, 1905. This act amended section 552 of the Compiled Laws of 1897, relative to the payment of the register's fee on appeal, and contains the following proviso:

"*Provided, however,* That when any such appeal shall, either before or after the passage of this act, have been dismissed for nonpayment of said register's fee within said period of thirty days, if the appellant shall by petition and competent proof make it appear to the Supreme Court that said fee has since been paid, and that justice requires a revision of the case upon the merits, said court may reinstate such appeal upon such terms as may be just," etc.

Under this statute defendant now petitions this court for a reinstatement of his appeal, filing a petition under oath and accompanied by affidavits showing the payment of the register's fee, containing a full showing of merits, and setting up facts which, considered in connection with the answer of complainant, satisfy us that there is a substantial controversy between the parties, and that justice requires a revision of the case upon the merits within the meaning of the act above quoted. See *Jerome* v. *Wayne Circuit Judge*, 117 Mich. 19.

Complainant's counsel contend, however, that the matter has been finally adjudicated by this court in its previous decisions, and that we ought not, therefore, to entertain this application. This contention would be well founded except for the statute above referred to. If that statute is operative as being within the constitutional powers of the legislature, the jurisdiction of this court to entertain the application in question is undoubted. Counsel for defendant argue for the constitutionality of the statute; that there is no constitutional provision in Michigan prohibiting retrospective laws, and they are therefore valid when no other objection than their retrospective character exists;

that a party has no vested right in a defense not affecting his substantial equities; that courts do not regard rights as vested contrary to the justice and equity of the case; that the act in question does not affect vested rights, but merely a particular remedy; and cite in support of their position the following authorities: Cooley on Constitutional Limitations (7th Ed.), p. 529; *Danforth* v. *Groton Water Co.*, 178 Mass. 472; *State* v. *Railway Co.*, 54 N. J. Law, 185, 187; *Gibson* v. *Hibbard*, 13 Mich. 214; *Beebe* v. *Birkett*, 108 Mich. 234; *Hauser* v. *Burbank*, 117 Mich. 463; *Judd* v. *Judd*, 125 Mich. 228; *Henderson, etc., R. Co.* v. *Dickerson*, 17 B. Mon. (Ky.) 173.

In Cooley on Constitutional Limitations, at page 528, of the seventh edition, the learned author says:

"Regarding the circumstances under which a man may be said to have a vested right to a defense against a demand made by another, it is somewhat difficult to lay down a comprehensive rule which the authorities will justify. It is certain that he who has satisfied a demand cannot have it revived against him, and he who has become released from a demand by the operation of the statute of limitations is equally protected. In both cases the demand is gone, and to restore it would be to create a new contract for the parties; a thing quite beyond the power of legislation. So he who was never bound, either legally or equitably, cannot have a demand created against him by mere legislative enactment. But there are many cases in which by existing laws defenses based upon mere informalities are allowed in suits upon contracts or in respect to legal proceedings, in some of which a regard to substantial justice would warrant the legislature in interfering to take away the defense, if it possesses the power to do so."

And on page 529 he proceeds:

"In regard to these cases we think investigation of the authorities will show that a party has no vested right in a defense based upon an informality not affecting his substantial equities. * * * There are numerous cases which hold that retrospective laws are not obnoxious to constitutional objection, while in others they have been held to be void. The different decisions have been based upon di-.

versities in the facts which make different principles applicable. There is no doubt of the right of the legislature to pass statutes which reach back to and change or modify the effect of prior transactions, provided retrospective laws are not forbidden, eo nomine, by the State constitution, and provided further, that no other objection exists to them than their retrospective character. Nevertheless, legislation of this character is exceedingly liable to abuse; and it is a sound rule of construction that a statute should have a prospective operation only, unless its terms show clearly a legislative intention that it should operate retrospectively."

In the case of *Danforth* v. *Groton Water Co.*, 178 Mass. 472, petitions had been presented to the superior court for a jury to assess damages for the taking of water rights. The respondent filed motions to dismiss on the ground that the petitioners had not applied first to the county commissioners, as required by the statute. The superior court dismissed the petitions. To this ruling the petitioners excepted, and at the request of the parties the judge reported the case to the supreme court for its determination. On May 17, 1900, the supreme court sustained the ruling of the superior court, and directed that the petitions be dismissed on the ground that the petitioners should first have made application to the county commissioners. Between the time of the submission of the cases and the handing down of the decision the legislature, on May 4, 1900, passed a statute providing that no petition now or hereafter pending in a superior court for the assessment by a jury of damages sustained by any person in such cases should be dismissed for want of jurisdiction solely on the ground that no previous application for the assessment of such damages had been made to a board of county commissioners. The water, the taking of which was complained of, was actually withdrawn in November, 1897, and by the respondent's charter the right of the petitioners to apply for the assessment of damages was limited to one year from the taking. Therefore, as the law stood prior to the statute of May 4, 1900, the petitioners had lost

their chance of recovery from respondent, because it was then too late to file new applications, and, as the court had decided, petitions on file could not be entertained. The court say, among other things:

" The statute provides that no such petition as the present 'now or heareafter pending in the superior court * * * shall be dismissed for want of jurisdiction in said court solely on the ground that no previous application for the assessment of such damages had been made to a board of county commissioners.' These words seem to us plainly to apply to the present petitions. It is true that the petitions had been ordered to be dismissed, but the orders were made subject to a report to this court, as we have said, and the cases were still pending in the superior court."

And finally the court say:

" The constitutional difficulties in the way of the present statute are as small as they well can be. Its effect in saving the petitioners from being barred by the statute of limitations in the respondent's charter is only secondary and accidental. All that it does directly which is open to question is to enact that parties having a case in court shall not be turned out for neglect of what under the circumstances was a naked and useless form."

In *Gibson* v. *Hibbard,* 13 Mich. 214, the holder of a draft drawn by defendant on a banking firm made a gift of it causa mortis to her mother, the validity of which was disputed on the ground that the draft was void, because at the time it was drawn the draft had placed upon it only a two-cent revenue stamp, while the law then in force (Act March 3, 1863, chap. 74, § 6, 12 Stat. 720) required one of three cents, and another provision made the instrument invalid and of no effect if a sufficient stamp was wanting. On the trial the draft was produced, a proper stamp placed upon it and canceled by defendant's counsel, whereupon the court rendered judgment for defendant. A later act of Congress provided (Act June 30, 1864, chap. 173, § 163, 13 Stat. 295) that "no instrument, document or paper made, signed or issued prior to the passage of this act, without being duly stamped, or hav-

ing thereon an adhesive stamp or stamps, to denote the duty imposed thereon, shall for that cause, if the stamp or stamps required shall be subsequently affixed, be deemed invalid and of no effect." Mr. Justice COOLEY, in delivering the opinion of the court, said:

"The question of the validity of this draft would arise primarily between the drawer and the holder. The drawer might have insisted upon its invalidity, if he saw fit to do so. But I do not understand that any person has such a vested right to have his contract declared void for want of compliance with some statutory requisite as will preclude the legislature from dispensing with the requisite and affirming the contract which he has attempted to make. A right to avoid one's contract because the party himself has neglected to perform the duty he owed to the government in respect to it is not 'property,' and the contractor is not in a position to complain when, for the furtherance of justice, the government allows the other party to perform the duty, and hold him to his contract. Retrospective laws of a similar character are by no means uncommon, and where they only give effect to the intentions of the parties they are not often unjust. See *Satterlee* v. *Matthewson*, 2 Pet. (U. S.) 380; *Wilkinson* v. *Leland*, 2 Pet. (U. S.) 627. And it would be difficult to imagine a law of this kind less objectionable than this. The purpose of the original act was to enforce, by a penalty, the payment of national dues. In many cases the law operated harshly upon persons not yet accustomed to the new mode of doing business. The subsequent act, instead of operating unjustly upon any one, simply relieved the holder of the paper from the penal consequences on the proper stamp being affixed. Instead of being an attempt to interfere with private rights, it was in the nature of a waiver by government of a penalty which had been affixed for reasons of State policy."

In *Beebe* v. *Birkett*, 108 Mich. 234, it was held that the act of 1895 (Act No. 186, Pub. Acts 1895), extending the time for settling cases in chancery, dealt with procedure only, and therefore applied to both pending and future cases. As the law stood at the time of the passage of this act, the circuit court had power to extend the time within which to settle a case for a period not exceeding

three months from the date of entering the decree. By
the act of 1895 the court was empowered to increase the
period for settling a case to four months, instead of three.
This act took effect on August 29, 1895, at which date the
time for appealing from the decree in question, which was
filed July 31st, had not expired, and the rights of the
parties had not become fixed and determined, but the case
was still pending in court, and might still have been ap-
pealed under the old law.

In *Hauser* v. *Burbank*, 117 Mich. 463, after consider-
able work had been done under a drain contract, the cir-
cuit court of Berrien county, in chancery, adjudged all
the proceedings subsequent to the first order of determi-
nation to be void. The commissioner then proceeded
anew to make application to the probate court for the ap-
pointment of commissioners to determine the necessity of
taking certain lands for the purpose of the drain. This
was opposed on the ground that the original application
was a nullity, and failed to give the commissioner juris-
diction. The probate judge so held. A new petition was
then filed under the statute providing:

"Whenever any drain has been located, established
and the work of construction completed or partially com-
pleted and any court has declared such proceeding to be
illegal or void for any cause other than that such drain is
unnecessary and not conducive to the public health, con-
venience or welfare, the commissioner shall, without un-
necessary delay, proceed to relay and complete such drain
under the provisions of this act." 3 How. Stat. § 1740 *g* 3.

Mr. Justice MONTGOMERY, in delivering the opinion of
the court, said:

"This provision would appear to be broad enough to
warrant this proceeding if the statute is valid. We see no
reason why this equitable provision should not be sus-
tained. It is not a proceeding to declare valid and effectual
proceedings already had. If it were, the power of the
legislature would be limited to dispensing with nones-
sentials. Jurisdictional essentials could not be dis-
pensed with. Cooley on Constitutional Limitations,

(6th Ed.), p. 471. The rule is that the legislature may validate acts which it might previously have authorized, but can go no further. As the legislature could not provide in advance that the steps to acquire jurisdiction might be omitted, so it cannot, by direct enactment, after failure to comply with adjudicated prerequisites, declare the proceedings valid notwithstanding. But this is not an attempt to validate these proceedings without giving the parties concerned an opportunity to be heard."

In the case of *Judd* v. *Judd*, 125 Mich. 228, it was held by this court that Act No. 230 of the Public Acts of 1899, giving the circuit court the power to punish as for contempt a person refusing to comply with an order for the payment of alimony, relates only to the remedy, and therefore applies to a defendant in a divorce suit wherein the decree for divorce and alimony was rendered prior to the passage of the act. Mr. Justice MOORE, in delivering the opinion of the court, said:

"There can be no doubt that, if the terms of that act apply to the facts of this case, it is within the provisions of the act. It is claimed by the solicitor on the part of the defendant that, as the decree was entered before this act was passed this case is not within its provisions. It is said that the statute is penal in its nature, and is not retrospective."

After quoting from the brief of the solicitor for the defendant, Mr. Justice MOORE proceeds:

"It is true the legislature cannot interfere with vested rights; but is the act in question an interference with vested rights? It does not change the amount of the decree. It does not increase the liability of defendant. It simply provides a remedy for the collection of a decree which defendant is legally and morally bound to pay."

So in *State Savings Bank of Detroit* v. *Matthews*, 123 Mich. 56, it was held that Act No. 200, Pub. Acts 1899, which amended the mortgage foreclosure law so as to authorize the circuit judge to decree a sale of the land after the lapse of six months, instead of one year, as theretofore provided, from the filing of the bill to foreclose, and

allowed the mortgagor six months in which to redeem, affected the remedy only, and did not amount to an impairment of the obligation of existing contracts, and that therefore, foreclosure decrees entered after the amendatory law became operative should conform to the provisions of the amendment, even though the suits in which they were rendered were commenced before the amendment took effect.

The case of *Jamison* v. *Ramsey*, 128 Mich. 315, was decided upon the same principle.

In the case of *Henderson, etc., R. Co.* v. *Dickerson,* 17 B. Mon. (Ky.) 173, we quote from the opinion of the court, as follows:

" The appellee obtained a judgment against the appellants for the injury he had sustained by the passage through his land of the railroad which they were constructing. The appellants, being dissatisfied with the judgment he had recovered against them, brought the case to this court to reverse it. Their appeal was, however, dismissed upon the ground that it was not authorized by their charter. Afterwards, by an act of the legislature passed at the session 1855–56 (1 Sess. Acts, chap. 366) the act incorporating the Henderson & Nashville Railroad Company was amended as follows:

" 'Where any assessment of damages for the right of way has been or shall hereafter be made, it shall be lawful for either of the parties, the person whose land has been condemned, or the said company, to prosecute an appeal to the court of appeals, at any time within three years from the time such assessment was made, for the correction of any errors that may have been made to the prejudice of the party appealing.'

" Since the passage of this amendatory act, the appellants have again brought the case to this court; and the counsel for the appellee contends that the amended act, so far as it is intended to operate retrospectively, is unconstitutional and void.

" As a general principle, retrospective legislation is undoubtedly impolitic; but with the wisdom or policy of that part of the act under consideration which operates retrospectively we have no concern. The question that we have to decide is whether that part of the act violates any of the

provisions of the constitution of this State or of the United States.

"Retrospective legislation is not expressly prohibited by any of the provisions contained in either of the Constitutions. Where it affects or impairs the obligation of a contract, it is prohibited. But it does not have that effect in this case, because there was no contract existing between the parties. It is not an ex post facto law, for such laws relate exclusively to offenses against the public, and not to private wrongs and injuries. *Calder* v. *Bull*, 3 Dall. (U. S.) 386.

"No constitutional provision has been designated as prohibiting this species of legislation. But it is said that at the time of the passage of the amendatory act the judgment appealed from was, by the laws then in force, final and conclusive, and that, consequently, the appellee had a vested right to the amount thereof, of which he has been deprived by the legislation in question, which must for that reason be deemed to be unconstitutional.

"A vested right may be considered as the power to do certain actions or to possess certain things lawfully. In its latter aspect it is substantially a right of property, and as such is protected by those provisions in the Constitution which apply to such rights. But a right to property is a perfect and exclusive right, and a right, therefore, to recover the amount of a judgment, cannot be called a perfect or a vested right. *Calder* v. *Bull*, 3 Dall. (U. S.) 386, 394. The appellee has a vested right in his land. This right he cannot be divested of under the Constitution until just compensation has been made him for it. The judgment which he obtained did not divest him of his right to his property, nor did it enlarge his rights, nor invest him with any additional ones. He could not have a vested right to the land and also to the amount of the judgment. A vested right to the latter, in the proper sense of the term, could not accrue until the money was collected. He has a constitutional right to have just compensation made him before he shall be deprived of his property; but the legislature has the power to prescribe the mode in which such compensation shall be ascertained and determined in a fair and just manner. The amendatory act under consideration did not violate nor impair any vested right, but only furnished to either party the same opportunity which other litigants had to correct any errors that may have been committed by the court below.

We do not, therefore, regard the act as unconstitutional."

If this decision of the Kentucky court is not to be restricted to judgments for damages in proceedings for the condemnation of lands under the power of eminent domain, where the owner of the lands can only be deprived of his land by the payment of the judgment, then it would seem to be an authority directly in support of the petitioner's contention. None of the other cases cited and above referred to does, however, in our opinion, sustain petitioner's contention. In the case at bar the appeal had been dismissed for the reason that under a mandatory statute the right to appeal had been irrevocably lost, as the law existed, when this court entered its order dismissing such appeal. The case was as much at an end as though no appeal had been taken at all, and the decree of the circuit court in chancery for Genesee county had become a final decree, entitling the complainant to all the rights thereby given. The appeal was not pending at the time the statute was passed, as in *Beebe* v. *Birkett*, and *Danforth* v. *Groton Water Co.*, supra, so that the complainant had no final decree, and therefore was invested with none of its rights, but was wholly determined, and at an end, so far as the courts are able in the exercise of their orderly jurisdiction to put an end to litigation. The amendatory statute applies to all cases in which the petition shall be filed within one year after the dismissal of the appeal. It is manifest that in that interval of time important personal and property rights may have come into existence and vested by virtue of decrees which the effect of the reinstating of appeals in such cases may entirely change and destroy. We think the rights obtained under such decrees become vested rights which neither the legislature nor this court can impair. In our opinion, the great weight of authority supports our ruling in this regard.

In *Hill* v. *Town of Sunderland*, 3 Vt. 507, it was held that a statute allowing an appeal from decisions of road commissioners made before the passing of the statute was

unconstitutional as respects the damages and costs awarded to individuals. The court, in its opinion, uses the following language:

" Under this statute, which clearly undertakes to give the right in a case like the present, the town of Sunderland took this appeal. And if the committee appointed by the county court should reverse the proceedings of the road commissioners, and if this statute is operative as applied to such case, instead of the appellees collecting and retaining the costs awarded them by the road commissioners the town of Sunderland must recover their costs against these appellees. The effect of the statute would then be to provide a course of proceedings by which a judgment, final and conclusive between the parties long before the statute had existence, might be reversed, and the opposite party recover costs. The very supposition that a statute could have such a deleterious effect to unsettle controversies long settled according to existing laws, exhibits the doctrine of nullification in a form by no means pleasant or useful. * * * As well might the legislature have passed a law at the same session granting new trials before new panels of jurors in all actions tried by jury for the year next preceding. The judgments in all those cases were no more final between the parties than was this judgment in favor of the appellees and against the town of Sunderland for their costs. You might say the same of all judgments rendered by single magistrates in any given year; so of all judgments rendered by any courts whatever; and that whether on trial or by default. The truth is, there must be an end of strife somewhere. And where will it be if not when a judgment is recovered which is final by the laws then existing ? What, indeed, makes a judgment final but its being declared so by the laws then existing ?"

This question came before the court of appeals of New York in the case of *Germania Savings Bank* v. *Village of Suspension Bridge*, 159 N. Y. 362. In the course of the opinion the court say :

" If the act under consideration does not operate retrospectively, the appeal is not regularly before us, and should be dismissed. If it does act retrospectively, it may deprive the defendant of a vested right in property, and

to that extent is forbidden by the constitution. Const. art. 1, § 6. The legislature has control of remedies so far as they affect existing actions. This control includes the power to extend the time to appeal, or to grant a new right of appeal, provided some time yet remained, according to the law in force when the legislature acted, within which an appeal might have been taken. If, however, according to the law existing when the statute extending the time to appeal or granting a new right of appeal was passed, the judgment had become final and unalterable, because no further right of appeal existed, then the judgment conferred a vested right, and was property, of which the owner could not be deprived by an act of the legislature, or otherwise than through due process of law. An appeal brought pursuant to a statute which authorizes an appeal after the time provided by law had expired, or authorizes a further appeal after the only appeal authorized by law had been brought and finally decided, although it might result in the reversal of the judgment, and be in form a judicial proceeding, would not be what is known as 'due process of law,' which is not satisfied by a judgment based upon an unconstitutional statute.

" A judgment is a contract which is subject to interference by the courts so long as the right of appeal therefrom exists; but when the time within which an appeal may be brought has expired it ripens into an unchangeable contract, and becomes property, which can be disposed of or affected only by the act of the owner, or through the power of eminent domain. It is then beyond the reach of legislation affecting the remedy, because it has become an absolute right, which cannot be impaired by statute. Remedies may be modified even as to pending actions, but no action can be regarded as pending when it has expanded into a judgment, and the time to appeal has expired, or the only appeal allowed by law has been taken and decided. It is then no longer depending, because there is nothing further that can be done to affect the rights of the parties. As a claim against which the statute of limitations has fully run cannot be revived by legislation, so a right to appeal from a judgment which has passed through all the appellate courts that have jurisdiction to hear it cannot be conferred by legislation. According to the law in existence when the statute under consideration was passed, the judgment which we are now asked to review had become final in every sense, and was the

property of the defendant, the same as the money in its treasury. The following authorities sustain the principle upon which these conclusions rest: *Burch* v. *Newbury*, 10 N. Y. 374, 394; *Dunlop* v. *Edwards*, 3 N. Y. 341; *Benton* v. *Wickwire*, 54 N. Y. 226; *People* v. *Fowler*, 55 N. Y. 675; *New York, etc., R. Co.* v. *Van Horn*, 57 N. Y. 473; *Luhrs* v. *Eimer*, 80 N. Y. 171; *Wheeler* v. *Jackson*, 137 U. S. 245; *Piatt* v. *Vattier*, 1 McLean (U. S.), 146; *Bigelow* v. *Bemis*, 2 Allen (Mass.), 496; *Ryder* v. *Wilson's Ex'rs*, 41 N. J. Law, 9, 11; *Davis* v. *Minor*, 1 How. (Miss.) 183; *Town of Bradford* v. *Brooks*, 2 Aiken (Vt.), 284; *Stipp* v. *Brown*, 2 Ind. 647; Cooley on Constitutional Limitations (5th Ed.), 448, 455."

To the same effect are *Johnson* v. *Gebhauer*, 159 Ind. 271; *Gompf* v. *Wolfinger*, 67 Ohio St. 144; *Wieland* v. *Shillock*, 24 Minn. 345, and *Atkinson* v. *Dunlap*, 50 Me. 111.

It follows that as to appeals which had been determined when the act took effect, the act is unconstitutional, and of no effect.

The petition is denied, without costs.

MOORE, C. J., and CARPENTER, MCALVAY, GRANT, MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.