**SEARCY et al. v. STATE ex rel. CARL et al.**

No. 9164—Opinion Filed Aug. 8, 1917.

Rehearing Denied Sept. 18, 1917.

(167 Pac. 476.)

(Syllabus by the Court.)

**1. Municipal Corporations—Board of Education—Nomination.**

Under section 3, chapter 278, Act March 31, 1915 (Sess. Laws 1915, pp. 530, 531), the members of the board of education in cities of less than 5,000 population are nominated, one from each ward and one from outlying territory, and elected by the qualified voters of the respective ward and outlying territory, without regard to whether the city is operating under a charter form of government or not; the provision in respect to the election of the members of the board being applicable to both charter and noncharter cities.

**2. Statutes—Construction—Proviso.**

The natural and appropriate office of a proviso being to restrain or qualify some preceding matter, it should be confined to what precedes it, unless it clearly appears to have been intended to apply to some other matter. It is to be construed in connection with the section of which it forms a part, and it is substantially an exception.

**3. Statutes—Construction—Pari Materia.**

Statutory provisions, which have been repealed or superseded, may be looked to as an aid in the construction of amendatory acts in pari materia.

Error from District Court, Wagoner County; W. J. Campbell, Assigned Judge.

Mandamus proceedings by the State of Oklahoma, on relation of G. D. Carl and others, against Howard Searcy and others. There was a judgment in favor of relators, and respondents bring error. Reversed.

W. O. Rittenhouse and Robert F. Blair, for plaintiffs in error.

9—64

Castle & Broaddus, for defendants in error.

SHARP, C. J. This case arises out of a controversy between relators and the respondents as to the law governing the election of members of the board of education in the city of Wagoner, a city of the first class operating under a charter form of government. Plaintiffs in error contend that, while Wagoner is a charter city of less than 5,000 population, it is not controlled in the matter of the selection of its board of education by the city ordinances, but by the act of March 31, 1915 (Sess. Laws 1915, pp. 529-531); while the defendants in error claim that under authority of said act, which they say was in force at the time of their election, having been elected pursuant to the charter provisions of said city, they constitute the duly elected members of the board of education, and that hence the judgment awarding them a peremptory writ of mandamus should be affirmed. The case appears, therefore, to rest upon the construction of section 3 of the 1915 act.

The point of difference that gives rise to the controversy is whether the last proviso of the amended statute refers to cities of less than 5,000 population generally, or to cities other than those that have adopted a charter form of government having less than the population named. It will, we believe, tend to somewhat aid in properly construing the act to look into its early history, and the changes that have from time to time taken place in its provisions. Prior to the time when there was legal authority in the territory now comprising the state for the organization of municipal government under charter form, the law controlling the time and manner of the election of members of the board of education in cities of the first class, as well as the term of office of the members, was that contained in section 5836, article 7, chapter 73, of the Statutes of 1893. Upon the organization of state government, the Constitution conferred upon any city containing a population of more than 2,000 inhabitants power to frame a charter for its own government, consistent with and subject to the Constitution and laws of the state. Constitution, art. 18, par. 3a. Thereafter the Legislature amended section 5836 of the Statutes of 1893 (Sess. Laws 1910, pp. 238, 239), by providing that, in cities within the state which had or might thereafter adopt a charter form of government, such cities should have the power of fixing the number of members of their boards of education, and terms of office, and might, subject to the Constitution and general laws of the state, regulate the time and manner of the election of the members of the board of education, and their terms of office. The amended statute, with respect to the election of boards of education in cities of the first class which had adopted a charter form of government, is substantially contained in the Revised Statutes. Rev. Laws 1910, sec. 456.

May 22, 1913, the Legislature passed an act prescribing the laws of the government of the common schools of Oklahoma and repealing all acts and parts of acts in conflict with any of its provisions. The statute covers 97 pages of the 1913 Session Acts and is general in its nature, and was intended to furnish a complete statute as to all subjects included therein after it became effective on January 1, 1914. State ex rel. Friend, Co. Atty., v. Cummings, 47 Okla. 44, 147 Pac. 161. The act, though very comprehensive, failed to include any provision upon the subject of the election of the members of boards of education in charter cities. In 18 days after the opinion in the Cummings Case was filed the Legislature passed the act amending section 6, art. 6, ch. 219, of the Session Laws of 1913, which amended statute is the one now under consideration. The 1915 statute, at the beginning of section 3, re-enacted section 6 of the 1913 act without change, other than the addition of a clause for the election at large of an additional member of the board of education in districts containing no outlying territory. The original section contained at the close thereof three clauses in the form of provisos: (1) That no member of the board of education should be a member of the council, nor should any member of the council be a member of the board of education; (2) that the officers and members of the boards of education in cities of the first class should hold their offices for the full term for which they were elected; and (3) that boards of education in independent districts not cities of the first class, should consist of three members, to be selected by the district at large at the same time and in the same manner as school district officers. The amendments to the statute contained in the 1915 act are all in form provisos. The first is to the effect that cities of the first class acting under a charter form of government may fix the number of members of the board of education of such city and outlying territory attached thereto for school purposes, and regulate the time and manner of election of such members, followed by a validating clause. The second proviso refers to the necessity of the approval of certain ordinances subsequently adopted by a majority vote of the electors of such charter cities. The third proviso requires that in

cities of less than 5,000 population there shall be nominated a member of the board of education, one from each ward and one from outlying territory, to be nominated and elected by the qualified voters of the respective ward and outlying territory. Taken literally, this provision includes all cities of less than 5,000 population, whether operating under a charter form of government or otherwise. It is when read in connection with the other provisions of the amended section, or when considered in a restrictive sense, such as provisos are often properly considered, that uncertainty arises as to its meaning.

It is not an uncommon mode of legislation to frame an act with general language in the enacting clause and to restrict its operation by provisos. Indeed, the present act contains six provisos, one immediately following the other. Three of the six, we have seen, are found in the original statute, and three in the amended statute. The natural and proper office of a proviso is to restrain or qualify some preceding matter, and will ordinarily be confined to what precedes it, unless it clearly appears to have been intended to apply to some other matter. Leader Printing Co. v. Territory, 6 Okla. 302, 50 Pac. 1001; Allen et al. v. Reed et al., 10 Okla. 105, 60 Pac. 782, 63 Pac. 867; Brewer et al. v. Rust, 20 Okla. 776, 95 Pac. 233. But, as said in Jefferson v. Winkler, 26 Okla. 653, 110 Pac. 755, this rule is not without its exceptions, for—
"where it is plainly intended that such proviso shall limit, qualify, or define other sections or provisions of the act than that of which it forms a part, the court should give it such meaning."

The proviso should be construed in connection with the section of which it forms a part, and, if the context requires, it may be considered tantamount to an independent enactment. We think it clear that the proviso respecting cities of less than 5,000 population does not refer to the immediately preceding paragraph or proviso, as the latter is directed only to the requirement necessary for the adoption of certain ordinances enacted subsequent to the approval of the act. Looking to the amended section as a whole, and giving effect to each of the provisions thereof, we are of the opinion that it was the purpose of the Legislature to ordain that in charter cities having a population of 5,000 or upwards the provisions of the charter and ordinances adopted pursuant thereto should govern both as to the number of members of the board of education and to the time and manner of their election; that as to cities of less than 5,000 population, including charter cities such as

Wagoner, the provision of the statute respecting the election of members of the board of education should control. There is nothing in the latter proviso that authorizes the conclusion that the provision should not include charter cities. This counsel would have us read into the statute because of the broad language of the paragraph first contained in the amendment, giving to charter cities generally the right to fix the number of members of the board of education of such city and regulating the time and manner of their election. When the 1915 statute was enacted, instead of restoring to all cities operating under a charter form of government the same power contained in the 1910 act, and in the Revised Statutes, and in which no distinction was made on account of population, the Legislature for the first time, in effect, directed that in cities of less than 5,000 population the members of the board of education should be elected pursuant to the statute and not the charter. The change in the statute is significant, and may be considered in its exposition. Though not in force, earlier statutes may properly be considered in an effort to reach the legislative intent in the enactment of the subsequent statute. Endlich on the Int. of Stat. pars. 49, 517; Bank for Savings v. Field, 3 Wall. 495, 18 L. Ed. 207; Ex parte Crow Dog, 109 U. S. 556, 3 Sup. Ct. 396, 27 L. Ed. 1030; Commonwealth v. Bailey, 13 Allen (Mass.) 541; Ham v. Boston Board of Police, 142 Mass. 90, 7 N. E. 540. Similarly, clauses that have been eliminated from a Constitution by amendment may be referred to in aid of the interpretation of others originally associated with them and remaining in force. Chief Justice Marshall in Fletcher v. Peck, 6 Cranch, 139, 3 L. Ed. 162.

The rule which permits a resort to repealed and superseded statutes in pari materia is of great importance in the construction of statutes which re-enact, with changes, and repeal former ones, and in that of enactments containing revisions or codifications of earlier laws. As to the former, it is obvious that a change of language is some indication of a change of intention. Endlich on the Int. of Stat. par 51. We are persuaded, therefore, both from a reading of the act and from a careful study of the preceding acts in pari materia, that the purpose of the introduction in the 1915 statute of the proviso respecting cities having a population of less than 5,000 was that in such cities the Legislature intended to directly provide for the election of members of the board of education, their number and manner of election, and not to leave to such cities the power, as might otherwise be the case, to

multiply officers by selecting a large number of members to constitute the board of education in the smaller and less important cities of the state. This view finds support in the fact that the act provides that boards of education in independent districts shall consist of three members, to be selected from the district at large at the same time and in the same manner as school district officers. Our conclusion will also insure uniformity throughout the state in the selection of boards of education in the smaller cities, and will place the charter and noncharter cities under the same general law, save perhaps a difference that may exist as to the manner of the election of the members, whether by wards or at large. The distinction in this respect between the former part of the amended section and the latter proviso, while not unimportant, is not controlling upon our interpretation of the statute in the respects challenged.

As we understand, respondents Searcy and Donley were duly elected members of the board of education on the first Tuesday in April, 1915, under the general law then in force governing school elections in cities of the first class; other members elected at the time were J. W. Gibson, Ethel Allison, and Christine Keller, making five members in all, or one from each ward and one from the outlying district; that Allison and Gibson were elected for a term of two years and until their successors should be elected and qualified, and the other three members for a term of four years; that afterwards members Allison, Gibson, and Keller resigned, and respondents Drake, Evans, and Miller were selected as their successors in office. These members claim to be rightfully exercising the functions of the offices to which they were either elected or appointed upon resignation of the elected members, and as the relators are without right to the offices on account of the fact that their election was under the authority of the ordinance of the city providing for the election of eight members at large, and not pursuant to the statute, but in violation thereof, their tenure of office should not be interfered with. Nor do we understand that the right of the respondents originally to hold the offices to which they were elected or appointed is seriously questioned; only that under the 1915 statute and the election held in April, 1917, they are no longer entitled to the offices. As we have held that the statute and not the ordinance of the city controls, and as the relators were elected in pursuance of the latter and in violation of the former, their title to the offices and their right to the possession of the

books, records, papers, documents, and paraphernalia, and all other property belonging to the board of education, must be denied, without regard to the fact that the original term of office of a part of the board may have terminated. Until a valid election was held, such members would continue in office until their successors were duly elected and qualified.

For the reasons stated, the judgment of the trial court is reversed.

All the Justices concurring, except TURNER and RAINEY, JJ., absent and not participating.