## BAKER, Ex'r, v. TULSA BLDG. & LOAN ASS'N.

No. 25959.    Oct. 6, 1936.

Rehearing Denied Nov. 17, 1936.

Application for Leave to File Second Petition for Rehearing Denied March 23, 1937.

Hugh Ownby, for plaintiff in error.

Milsten & Milsten, for defendant in error.

GIBSON, J. This is an appeal from the district court of Tulsa county. The parties occupy the same position here as in the trial court and will be referred to as plaintiff and defendant.

The question presented by this appeal for our determination is formulated by the conflicting views of plaintiff and defendant in reference to the scope and effect of section 5377, C. O. S. 1921 (sec. 9800, O. S. 1931), and the amendment thereof as made by chapter 54, S. L. 1933.

It appears from the record that on October 6, 1930, one Herbert S. Corliss purchased 250 shares of the fully paid stock of the defendant Tulsa Building & Loan Association, which stock so purchased had at the time a par value of $25,000. At the time the stock was purchased section 5377, C. O. S. 1921 (section 9800, O. S. 1931), was in effect and provided, inter alia, as follows:

"Upon the death of a stockholder his legal representative shall be entitled to receive the full amount paid in by him and legal interest thereon, first deducting all charges that may be due on the stock."

The Fourteenth Legislature in regular session enacted Senate Bill No. 348 (chap. 54, Session Laws, 1933, which became effective May 5, 1933), whereby the relevant provision of said section 5377, supra, was amended to read as follows:

"Upon the death of a stockholder his legal representative shall be entitled to receive the amount paid in by such deceased stockholder and such proportion of the profits as the by-laws may determine, less all fines and other charges and less a proportionate share of any loss sustained by such association."

Herbert S. Corliss died on July 19, 1933, testate, and C. V. Baker was duly appointed executor of his estate on October 3, 1933, and in such capacity instituted this action in the district court of Tulsa county, specifically pleading the provisions of section 5377, C. O. S. 1921 (section 9800, O. S. 1931), and asserting a vested contractual right thereunder in his testator and the consequent right in himself to sue for and receive from the defendant the full value of said shares of stock so

held by his testator and which amounted to the sum of $26,875 at the time the suit was instituted, and for which amount the plaintiff sought recovery together with the interest thereon at the rate of 6 per cent. per annum from September 30, 1933.

The defendant interposed a general demurrer to the petition of the plaintiff. The trial court sustained the demurrer of the defendant, and the plaintiff elected to stand upon his petition. Plaintiff's cause of action was thereupon dismissed without prejudice to further proceeding under the provisions of chapter 54, S. L. 1933. Thereupon plaintiff prosecuted this appeal.

It is the contention of the plaintiff that when Herbert S. Corliss purchased the 250 shares of stock involved herein on October 6, 1930, the provisions of section 5377, C. O. S. 1921 (sec. 9800, O. S. 1931), became a part and parcel of the contract between his testator and the defendant, Tulsa Building & Loan Association, evidenced by the stock certificates issued, and that said section of the statute conferred a vested right upon his testator which could not be withdrawn by either the association or by the Legislature, and that the attempt of the Legislature to do so by the enactment of chapter 54, S. L. 1933, constitutes a violation of his rights in contravention of the provisions of section 15, art. 2, of the Constitution of Oklahoma and of section 10, art. 1, of the Constitution of the United States, and deprives him of his property without due process of law, in violation of section 1 of the 14th Amendment to the Constitution of the United States.

The defendant contends that the provisions of section 5377, supra, merely granted to plaintiff's testator a power and privilege which was subject to contingencies and which, unless exercised while said provision of law was in effect, ceased and determined, and that, since the statute had been amended by chapter 54, S. L. 1933, while plaintiff's testator was alive and became effective before his death, thereby plaintiff and his testator were deprived of any and all prior rights, power, and privileges which were secured to them under the provisions of said section 5377, supra; and further contend that building and loan associations are peculiarly within the power and control of the Legislature and within the police power thereof and that any and all of their contracts are subject to change thereunder. As we have said in Crump v. Guyer, 60 Okla. 222, 157 P. 321, 2 A. L. R. 331:

"If this was a 'vested right,' the authorities are both clear and strong to the effect

that it could not be destroyed or impaired, except by 'due process of law.' Then the first question for us to determine is, Was the right to convey, conferred on Irene Stewart by the act of 1897, a mere 'statutory privilege' or a 'vested right?' Words and Phrases, Second Series, vol. 4, p. 1166, in defining vested rights, says:

" 'Rights are "vested" when the right of enjoyment, present or prospective, has become the property of some particular person or persons as a present interest. Trustees of Presbytery of Jersey City v. Trustees of First Presbyterian Church of Weehawken, 80 N. J. Law, 572, 78 Atl. 207, 210.'

"Again:

" 'A "vested right" may be considered as the power to do certain actions or to possess certain things lawfully. In its latter aspect it is substantially a right of property, and as such is protected by those provisions in the Constitution which apply to such rights.' * * *

"It cannot be disputed that when Irene Stewart married, the statute then in force gave her the absolute right to sell and convey this property. And it is almost universally held that, 'The right to sell and convey is a property right,' and one of the highest privileges and dearest rights connected with ownership. In fact, it is the one right which gives the thing owned its greatest value. Rigney v. Chicago, 102 Ill. 64; People v. Havnor, 149 N. Y. 195, 43 N. E. 541, 31 L. R. A. 689, 52 Am. St. Rep. 707; Bruce v. Strickland, 81 N. C. 267. And Judge Story in Society v. Wheeler, 2 Gall. 105, Fed. Cas. No. 13, 156, says:

" '* * * Upon principle, every statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective.'

"Section 54, art. 5, of the Constitution of Oklahoma, among other things, provides that the repeal of a statute shall not 'affect any accrued right.' Under the act of 1897 did not the right of Irene Stewart to sell and convey this land accrue upon her marriage? And was not that right under that statute as absolute as if she had attained her majority? We think so. Then, if that be true, there is no question that it was beyond the power of the Legislature to impair or take that right away from her, after it had accrued, by repealing the statute by which the right did accrue and had been conferred. We think the doctrine announced by Judge Storey in Society v. Wheeler, supra, is sound, which is to the effect that upon principle every statute which takes away or impairs 'vested rights' acquired under existing laws, imposes a new duty, or attaches a new disability, must be deemed retrospective. To

hold otherwise would leave us at sea, and place it within the power of the Legislature at will to disturb, and even destroy, by subsequent legislation rights which had accrued under existing laws. The distinction, however, between 'vested rights' and 'statutory privileges' should at all times be borne in mind: for as stated by Judge Cooley:

" 'The citizen has no vested right in statutory privileges and exemptions. Among these may be mentioned exemptions from the performance of public duties upon juries, or in the militia, and the like; exemptions of property or person from assessment for the purposes of taxation; exemptions of property from being seized on attachment, or execution, or for the payment of taxes; exemption from highway labor, and the like. All these rest upon reasons of public policy, and the laws are changed as the varying circumstances seem to require. The state demands the performance of military duty by those persons only who are within certain specified ages: but if, in the opinion of the Legislature, the public exigencies should demand military service from all other persons capable of bearing arms, the privilege of exemption might be recalled, without violation of any constitutional principle. * * * So a license to carry on a particular trade for a specified period may be recalled before the period has elapsed.' Cooley's Constitutional Limitations (7th Ed.) p. 546.

"But a 'vested right' is the power to perform certain actions or to possess certain things lawfully, and is substantially a property right; and when it has been once conferred or becomes absolute by contract or existing laws, it is protected from invasion by the Legislature, by those provisions in the Constitution which apply to such rights. In State v. Julow, 129 Mo. 163, 31 S. W. 781, 29 L. R. A. 257, 50 Am. St. Rep. 443, Justice Sherwood, in discussing this question, says that property is placed in the Constitution in the same category with liberty and life. And 'where rights of property are admitted to exist, the Legislature cannot say they shall exist no longer'; that if it were otherwise 'the Constitution would then mean that no person shall be deprived of his property or rights unless the Legislature shall pass a law to effectuate the wrong; and this would be throwing the restraint entirely away.'

"And in Gladney v. Sydnar, supra, it is held that:

" 'A failure to exercise a vested right before the passage of a subsequent statute which seeks to divest it in no wise affects or lessens that right.' Trustees of Presbytery of Jersey City v. Trustees of First Presbyterian Church, 80 N. J. Law, 572, 78 Atl. 207: Graham v. Great Falls Water Power & Townsite Co., 30 Mont. 393, 76 P. 808: Evans-Snider-Buel Co. v. McFadden, 105 Fed. 293, 44 C. C. A. 494, 58 L. R. A. 900; Downs v.

Blount, 170 Fed. 15, 95 C. C. A. 289, 31 L. R. A. (N. S.) 1076; National Bank of Commerce v. Jones, 18 Okla. 555, 91 P. 191, 12 L. R. A. (N. S.) 310, 11 Ann. Cas. 1041; Lohrstorfer v. Lohrstorfer, 140 Mich. 551, 104 N. W. 142, 70 L. R. A. 621; Marshall v. M. E. and S. V. King, 24 Miss. 85.

"We are therefore forced to the conclusion that the 1909 statute could not be retroactive and take away a right that had already accrued, but was only prospective; and consequently did not affect the accrued right of Irene Stewart to convey her real estate, since that right had accrued to her under an existing law, before the passage of the 1909 act. Even where a legislative act affects only forms of procedure and statutory privileges, the general rule, and the one adopted by this court, is that, even those statutes are not retrospective, but must be construed as having a prospective operation unless the purpose and intention of the Legislature to give them a retrospective effect is expressly declared or is necessarily implied from the language used. In every case of doubt the doubt must be resolved against the retrospective effect.' Good v. Keel, 29 Okla. 325, 116 P. 777; Rolater v. Strain, 31 Okla. 58, 119 P. 992; Bell v. Bearman, 37 Okla. 645, 133 P. 188."

An examination of the provisions of section 5377, supra, reveals the fact that it gave to withdrawing stockholders of building and loan associations certain definite rights, among them being the right upon the death of such stockholder to have the full amount which had been paid in by him, together with legal interest thereon, paid to his legal representative. This was unequivocal and without limitation. It constituted a fixed right to a future act which the stockholder was entitled to rely upon and to enforce. The payment was to be made to his personal representative for the reason that the event upon which performance was based could only occur upon the death of the stockholder, and this event was in contemplation of both parties to the contract. Therefore all discussion relative to the right of the executor or administrator of a deceased stockholder is extraneous and beside the point. The contract was solely between the association and the stockholder: the personal representative was merely a medium for the completion of the terms of the contract upon the happening of a specified event. The rights of the parties were fixed by the contract, and as such vested within the definition of said term as set out in Crump v. Guyer, supra. Since this is true, then the rule announced by us in Oklahoma Cotton Growers Association v. Salyer, 114 Okla. 77, 243 P. 232, wherein we said:

"The existing statutes and the settled law

of the land at the time a contract is made become a part of it and must be read into it.

"All contracts are formed to be construed in the light of the rules and principles of law applicable to the subject-matter of the transaction, and those rules and principles control the rights of the parties; the laws upon the subject of a contract are read into it and become a part thereof to the same extent as though they were written into its terms. Where parties enter into a contract by virtue of authority derived from a certain act and in view of such rights as are created, defined and conferred by such act, it is elemental that the rights of the parties must be construed by the provisions of the act.

"Where a contract is entered into under such provisions and conditions, and such contract is alleged to have been breached while such act is still in force, then if any provision or terms contained in such contract are in violation of rights conferred by such act, which are remedied by a subsequent act, such subsequent act is void as to such provisions and violative of section 15, art. 2 (Bill of Rights) of the Constitution, as tending to violate the obligation of contracts"

—is applicable to the situation here presented. Not only certificates of shares held by such testator, but also the law pursuant to which they were issued and delivered, became a part thereof and remained effective conditions of said contract until the same had been fully performed or discharged in accordance with its terms or the mutual agreement of the parties.

As pointed out in the case of Searcy v. State ex rel. Carl, 64 Okla. 257, 167 P. 476:

"Statutory provisions, which have been repealed or superseded, may be looked to as an aid in the construction of amendatory acts in pari materia."

Therefore, applying the rule announced in the above case to the pertinent provision of section 5377, supra, and that portion of chapter 54, S. L. 1933, which amends previous statute, it is apparent that the Legislature recognized the fact that said section 5377, supra, conferred certain definite rights upon the stockholders of building and loan associations, and that it desired to change, modify, limit, and restrict such right materially, and that in passing chapter 54, S. L. 1933, it took away the prior absolute right granted by the provisions of section 5377, supra, wherein it provided:

"Upon the death of a stockholder, his legal representative shall be entitled to receive the full amount paid in by him and legal interest thereon, first deducting all charges that may be due on the stock"

—so that it provided thereafter as follows:

"Upon the death of a stockholder his legal representative shall be entitled to receive the amount paid in by such deceased stockholder and such proportion of the profits as the by-laws may determine less all fines and other charges and less a proportionate share of any loss sustained by such association."

Thus by this amendment the Legislature established an entirely new and different contract between building and loan associations and their stockholders. The amendatory act (chapter 54, S. L. 1933) therefore effectively and materially impaired the obligation of the contract entered into between the defendant and the plaintiff's testator and destroyed his vested right in contravention of section 15, art. 2, of the Constitution of Oklahoma and section 10, art. 1, Constitution of the United States, and section 1 of Amendment 14 of the Constitution of the United States.

As was said by Mr. Justice Osborn, speaking for this court in Security Bank & Trust Co. v. Barnett, 109 Okla. 298, 36 P. (2d) 874:

"Under section 10, art. 1, of the Constitution of the United States, and section 15, art. 2, of the state Constitution, the Legislature was prohibited from impairing the obligation of a contract made pursuant to existing provisions of law by a repeal of the provisions of law under which said contract was entered into."

For the reasons above set out, the trial court committed error in sustaining the demurrer to the plaintiff's petition.

The defendant urges, however, that since it is a building and loan association, it is peculiarly subject to legislative supervision and control under the police power reserved to the state, and that therefore it may not make contracts which cannot be abrogated by the state in the exercise of its reserve police power. In support of this contention our attention has been directed to an imposing array of authorities, notably among them being the cases of Rocker v. Cardinal Bldg. & Loan Ass'n (N. J.) 179 Atl. 667; Hopkins Fed. Savings & Loan Ass'n v. Cleary, 296 U. S. 315, 56 Sup. Ct. 235, 80 L. Ed. 251, 100 A. L. R. 1403; Treigle v. Acme Homestead Ass'n, 181 La. 941, 160 So. 637, 98 A. L. R. 69; and other cases involving the same questions of law and fact from the same jurisdiction.

The case of Treigle v. Acme Homestead Ass'n, supra, with its companion cases, was appealed to the Supreme Court of the United States and in an opinion by that court rendered on February 3, 1936, the judgment and

decision of the Supreme Court of Louisiana was reversed. See Treigle v. Acme Homestead Assn., 297 U. S. 189, 80 L. Ed. 575, 56 Sup. Ct. 408, 101 A. L. R. 1284, wherein the court said:

"The appellee bases its entire argument in support of the challenged enactment upon the proposition that, as building and loan associations are incorporated for a quasi-public purpose, the state has a peculiar interest and a concomitant power of supervision and regulation to prevent injury and loss to their members; and it is said that this court affirmed the principle in Hopkins Federal Sav. & L. Ass'n v. Cleary, decided December 9, 1935, 296 U. S. 315, 56 S. Ct. 235, 100 A. L. R. 1403. We have no disposition to qualify what was there said. We recognize that these associations, like banks and public service companies, are subject to a degree of regulation which would be unnecessary and unreasonable in the case of a purely private corporation. But laws touching building and loan associations, like those affecting banks or utility companies, must be confined to purposes reasonably connected with the public interest as distinguished from purely private rights. The Legislature has no greater power to interfere with the private contracts of such corporations, or the vested rights of their stockholders as such, under the pretext of public necessity, than it would have to attempt the same ends in a case of a private corporation. Though the obligations of contracts must yield to a proper exercise of the police power, and vested rights cannot inhibit the proper exertion of the power, it must be exercised for an end which is in fact public and the means adopted must be reasonably adapted to the accomplishment of that end and must not be arbitrary or oppressive.

"As we have pointed out, the questioned sections deal only with private rights, and are not adapted to the legitimate end of conserving or equitably administering the assets in the interest of all members. They deprive withdrawing members of a solvent association of existing contract rights, for the benefit of those who remain. We hold the challenged provisions impair the obligation of the appellant's contract and arbitrarily deprive him of vested property rights without due process of law."

We are of the opinion that the rule announced in the above-quoted case effectively disposes of the contention of the defendant and immeasurably weakens the force of the opinion in Rocker v. Cardinal Bldg. & Loan Ass'n, supra. At the present time this last cited opinion appears to stand almost alone, and we decline to follow it.

We are of the opinion that the plaintiff's testator at the time of his purchase of the stock involved herein acquired a vested right by reason of the provisions of section 5377, supra, which became a part and parcel of the contract between him and the defendant herein; that upon the death of plaintiff's testator, the enforcement of said contract devolved upon the plaintiff as a personal representative of said stockholder and pursuant to the terms of said contract, and that the right and liability of the respective parties was fixed, established and measured by the provisions of said section 5377, supra. We are further of the opinion that chapter 54, S. L. 1933, in so far as the same attempts to vary, change, and alter the contract between the building and loan association and its stockholders made prior to its enactment of said chapter 54, S. L. 1933, contravenes the rights of said stockholders in violation of section 15, art. 2, of the Constitution of the state of Oklahoma and section 10, art. 1, of the Constitution of the United States and destroys the vested right of said stockholders in violation of section 1 of the 14th Amendment to the Constitution of the United States. This cause is therefore reversed, with directions to overrule the demurrer of the defendant to plaintiff's petition and to take such other and further proceedings in said cause as may be consistent with the views herein expressed.

Reversed and remanded, with directions.

McNEILL, C. J., and BAYLESS, BUSBY, PHELPS, and CORN, JJ., concur. WELCH, J., dissents. OSBORN, V. C. J., and RILEY, J., absent.