ARCHIBALD et al. v. INDIAN TERRITORY BLDG. & LOAN ASS'N.

No. 30328.    March 3, 1942.

Rehearing Denied May 5, 1942.

*125 P. 2d 183.*

Thomas P. Holt, of Ada, and R. F. Barry, of Oklahoma City, for plaintiffs in error.

A. H. Ferguson and R. T. Stinson, both of Durant, for defendant in error.

BAYLESS, J. Nora Archibald, Adolphus Adair, and L. H. Adair commenced an action in the district court of Bryan county against the Indian Territory Building & Loan Association of Durant, Okla., a corporation, to recover from the defendant a sum of money alleged to be due to the plaintiffs, as the heirs of Emma Donahue, deceased, upon 560 shares of the prepaid capital stock of the association. The case was tried by the court without a jury, and the plaintiffs appeal from the judgment rendered.

December 12, 1922, Emma Donahue purchased 560 shares of the so-called prepaid stock of the association for which she paid $12.50 per share, or a total of $7,000, this class of stock being designed to permit the earnings of the stock to accrue to mature at a par value of $25 per share, making the investment, in that event, $14,000, at which time she could withdraw the money invested as provided by the statutes and by-laws of the association. For the purpose of this statement of fact, we may say this stock was matured about October 28, 1931, by the accruals of the earnings as designed. She paid nothing on the stock after the initial purchase price. About November 23, 1931, Emma Donahue served notice upon the association of her intention to withdraw this money, but on July 15, 1932, not having received the money in the meantime, she canceled this notice of withdrawal. It appears that from that time until her death she constantly endeavored to obtain a part of this money or its earnings from the association, and some of the earnings, on the matured value, were paid to her at various times. Emma Donahue died in the first part of the year 1935, and the plaintiffs above named were found to be her heirs and to inherit her personal estate in equal one-third shares each. Included in this personal estate was certificate No. 2088 evidencing the shares of stock above mentioned. In the first part of the year 1935 the secretary and manager of this association died and some question arose about the regularity of the accounts and records of the association. February 15, 1935, an audit of affairs was begun under the supervision of the Bank Commissioner of Oklahoma, and this audit was completed in about 60 days. June 1, 1935, the Bank Commissioner made an order criticising the management and affairs of the association. June 13, 1935, the directors of the association had a meeting and the minutes of the meeting, with a resolution attached making certain findings of deficiencies and mismanagement, evidenced the action at that time of the directors. The directors met again on July 23, 1935, and adopted a certain proposal looking to the adjustment of the affairs of the as-

sociation and directed notice be given of a special meeting of the stockholders to act upon the proposal. The stockholders met August 29, 1935, pursuant to this notice, and the minutes of that meeting show that the stockholders voted to adopt the proposal, which will be discussed hereafter. September 9, 1935, the directors met again and the minutes of their meeting included an order adopted by them putting into effect the proposal approved at a special meeting of the stockholders. On September 26, 1935, the Bank Commissioner made an order approving the action of the stockholders and directors and authorizing the resumption of business in regular course. Thereafter plaintiffs demanded full payment of the value of the matured stock owned by them, and when their demand was rejected this action followed.

The association defended this action by (1) admitting the issuance of the certificate of stock and the validity thereof; (2) by denying that the stock had ever matured because the dividends and credits which had been declared and applied to these shares of stock over the years were fictitious and without any basis in fact or law because the association had at all these times been operated at a loss because of mismanagement and peculation; (3) by insisting that plaintiffs, as stockholders and successors in interest of Emma Donahue, deceased, had joined in the approval of the proposal whereby the stock of the association was devalued, and the plaintiffs were bound by the action of the association in so devaluing its stock by both fact and law; and (4) by a general denial of responsibility in excess of the stock devalued on the theory that the association had been insolvent for years and the devaluation of its stock to adjust its affairs set the limit of its liability.

The trial court found and held in effect that the stock matured December 31, 1931, and that Emma Donahue in her lifetime and plaintiffs as her heirs were entitled to $14,000, with interest at 6 per cent per annum until August 29, 1935; that on the last-mentioned date the association reduced the book value of the stock to $7,000, and that plaintiffs are entitled to judgment against the association for certain cash, and new stock of a par value of $7,000 with the dividends on such stock since August 29, 1935, the date of its devaluation.

Plaintiffs present two propositions which they argue under several subdivisions, and defendant answers these propositions by discussing three propositions which we think cover the scope of plaintiffs' arguments, and for this reason we adopt the statement of defendant's propositions as the basis of our discussion.

We pass as a statement of an elementary proposition the primary argument, based on Holt v. Aetna Building & Loan Association, 78 Okla. 307, 190 P. 872, and the extensive annotation appearing in 98 A.L.R. 89 et seq., as to the historical purpose of these associations, and pass to a consideration of defendant's first proposition, which reads:

"The stock of Mrs. Donahue did not mature and therefore was never payable."

The evidence upon this point is not satisfactory on behalf of either party. Plaintiffs used an accountant as a witness who testified that he took defendant's book statement of Mrs. Donahue's account and calculated it according to the initial investment and the credits which had been entered, and determined that the stock matured about October 28, 1931. On cross-examination this witness admitted that he did not conduct any investigation of the correctness of the credits entered on this stock over the years but accepted the entries at their face value. Defendant used as a witness in its behalf an auditor from the office of the Bank Commissioner who audited the books and records of the association as stated above. This auditor testified that as early as 1924 there was some shortage in accounts, and that this condition existed over the years and culminated in a shortage in the ac-

counts of $96,023.35, and an operating loss of $21,630.72 as of the time of his audit, the close of business on February 14, 1935. However, when he was questioned further concerning solvency of the company, he made it plain that in his audit he did not make a monthly break-down of the condition of the company and made no effort to determine the exact status of the company's accounts on any date other than the date of his audit. He did testify over the objection of the plaintiffs that in his opinion the association was insolvent as early as 1928, and that it had over the years declared dividends and credited them upon this stock and paid them to other stockholders that were fictitious in the sense that they had never been earned and could only be shown by a juggling of accounts. In view of the fact that this witness had audited the records of the company and the records were available for an exact calculation and determination of when fictitious dividends were declared and the amount thereof, we think the plaintiffs' objections to the competency of this witness's conclusion and opinion on this point were well taken. In addition to this, the Bank Commissioner and the Building and Loan Board never determined that this association was insolvent. The Bank Commissioner went no further than to find certain violations of the law and unsafe practices. In any event, in consideration of all of this evidence, the trial court found, in effect, that this stock did mature, and we are unable to say that there is no evidence reasonably tending to support this finding, and therefore the court's finding, having the effect of a jury's verdict, must be allowed to stand.

Defendant's third proposition, which we discuss next, reads:

"The plaintiffs are still stockholders and not creditors of the association, and as such must share losses equally with the other members of the association."

This proposition is argued from several aspects, the plaintiffs taking the position that the stock having matured prior to the death of Emma Donahue, it should have been paid to her according to the provision of the statute, section 9823, O. S. 1931, 18 O.S.A. 234, and the terms of the by-laws of the association; and that in any event, when Emma Donahue died early in 1935, our statute, section 9800, O. S. 1931, 18 O.S.A. 212, reading:

"Upon the death of a stockholder, his legal representative shall be entitled to receive the full amount paid in by him and legal interest thereon first deducting all charges that may be due on the stock"

—required the payment of her stock to her personal representatives. In making the arguments in support of these views the plaintiffs deny that association was insolvent at any time prior to the maturity of the stock or prior to the death of Emma Donahue, and insist that even if the association did become insolvent prior to the death of Emma Donahue, her death fixed the status of her stock and prescribed the amount that should be paid.

The argument which the defendant makes in opposition to the plaintiffs' position assumes that the stock had never matured, that it was still outstanding stock of the association in the process of attempting to mature itself until the period of reorganization in August, 1935, and that the death of Emma Donahue brought about no change in the status of membership or rights respecting the stock. The authorities cited by defendant involve attempts to withdraw stock before maturity or after maturity where insolvency has or has not intervened. These authorities can be found in the annotation of 98 A.L.R., supra, but we do not think they are applicable to the situation presented to us because of our statute prescribing what shall be done in the event the death of a member stockholder has occurred.

We think our decision in the case of Baker v. Tulsa Building & Loan Association, 179 Okla. 432, 66 P. 2d 45, covers this case. In arriving at this conclusion we are taking into consideration, of course, our view stated above

upon the issue of whether the stock had matured for the purpose of arriving at the amount which was due to Emma Donahue at the time of her death. We think that our decision in the Baker Case construing section 9800, supra, makes it plain that when a stockholder dies the full amount paid in by him, which in this case is the $7,000 paid by Emma Donahue plus the earnings thereon to the date of maturity plus the earnings thereon from maturity to her death, must be paid to the personal representative, and that it was not the intention of the Legislature to permit that amount to be reduced either by law or by the act of the association itself. In the Baker Case there was no issue or proof of insolvency, but the argument which the association made in that case, based upon the amendment of section 9800, supra, by chapter 54, Session Laws 1933, assumed losses had been sustained by the association which all stockholders had to share alike. In this case, of course, there were not only losses, but, as urged by the association, losses which amounted to a state of insolvency. It seems to us from the decision we announced in the Baker Case the extent of the losses suffered, which are sought to be charged against the stock of a deceased stockholder, is immaterial. The statute that was in effect at the time the stockholder purchased stock, which was section 9800, supra, in providing that the personal representative should receive "the full amount paid in" meant just what it said. This view of the statute is reenforced by the act of our Legislature in 1933 in amending section 9800, supra, to authorize the deduction of "a proportionate share of any loss sustained by such association." Stock of stockholders purchased prior to the 1933 amendment was unaffected by losses of the association in the event of the death of stockholder, whereas stock purchased thereafter was subject to a law that provided that the full amount paid in, less "a proportionate share of any loss," should be paid in the event of death.

Therefore, we are of the opinion that upon the death of Emma Donahue the statute required that the amount paid in by her, as above stated, should be paid to her personal representative, the plaintiffs herein. Because her stock was purchased prior to the amendment of 1933, the statute, section 9800, supra, prescribed the duty the association owed her, and this duty could not be lessened by any action of the association by deliberate act or as a result of its losses sustained through mismanagement or otherwise.

We come now to defendant's second proposition, which reads:

"Two of the plaintiffs are estopped to question the validity of the reorganization."

The effect of the limitation of this proposition to two of the plaintiffs is to say that the plaintiff Adolphus Adair did nothing either personally or by proxy whereby he could have been estopped to question the validity of the reorganization. It is urged that Nora Archibald, acting in her own proper person and as the agent of L. H. Adair, did things which are asserted as the basis of estoppel against them.

When directors of the association considered the audit and criticism of the State Bank Commissioner, they determined to submit a proposal to the stockholders for the devaluation of all stock and the reorganization of the association for the purpose of endeavoring to secure the consent of the Bank Commissioner to continue business as a building and loan association under the laws of Oklahoma. Notices of the special meeting of stockholders was sent to all stockholders. Nora Archibald was the only one of the plaintiffs present in Durant at and during the time of this meeting. The evidence shows she was informed before the meeting of the nature of the proposal, and that she assented thereto, and that she gave a proxy on behalf of herself and L. H. Adair. There is no evidence that she had authority to give a proxy on behalf of L. H. Adair, and for this reason we consider her attempt to give such proxy to be without force or effect. 18 C.J.S.

1249, § 550 (b). Therefore, defendant's argument in this respect as applied to L. H. Adair is without merit. Other reasoning on this issue, stated below, covers L. H. Adair also.

The evidence shows that after Nora Archibald had given her proxy, she nevertheless attended the meeting in person. She argues from this two rules of law: (1) her presence at the meeting revoked the proxy (14 C. J. 911, § 1413, and Sundheim, Law of Building & Loan Associations, page 88, § 84); and (2) a proxy in general terms is not an authority to vote on an extraordinary measure. We think Nora Archibald's contention that her presence at the special meeting of the stockholders had the effect of revoking the proxy given by her is correct. Defendant calls attention to the fact that Nora Archibald did not attempt to exercise her rights as a stockholder by casting her own vote, and cites the evidence to the effect that the person holding her proxy consulted with her and apparently voted according to her expressed wishes. Nora Archibald makes another argument based on a well-known rule of law, that is applicable to all of the plaintiffs, because of which we do not attach any particular significance to her conduct, nor with respect to whether her proxy was or was not effectual. We do not believe that she or the other plaintiffs were stockholders of the defendant association or entitled at that time to exercise voting rights.

In 9 Am. Jur. p. 108, § 14, and in 12 C.J.S. 419, § 16, is discussed the various manners in which a person acquires membership in a building and loan association. It is pointed out that acquiring a membership in such an association implies a deliberate contract, intelligently entered into; and that a person does not become a member merely by becoming the owner of rights that may be converted into the ownership of stock. Specifically, it is said that the heirs or personal representatives of a member do not ipso facto become members by virtue of their successorship to the title to the stock owned by the deceased member. In the same work, on page 436, § 28, it is stated as a general rule that the death of a stockholder terminates his relationship to the association, and that his personal representative or heir is entitled to receive the withdrawal value of the stock. We think these general rules are in keeping with the purpose and intent of the statute, section 9800, supra, that was in effect when Emma Donahue purchased her stock, and that our Legislature thereby stated its intention that her membership ceased on her death, and that what she had paid in should be paid to her personal representative. At the time Nora Archibald attempted to give proxies on behalf of herself and L. H. Adair, and at the time she attended the special meeting of the stockholders, we think she was not a stockholder nor were any of the other plaintiffs, and for that reason neither she nor they were eligible to appear and vote or participate in the proceedings. Their rights and the obligations of the association to them were fixed by statute in view of the death of the member stockholder, Emma Donahue.

Nevertheless, this leaves to be disposed of the contention whether her conduct could amount to an estoppel. It appears from the evidence that more than enough stock was present and eligible to vote, and did vote, to constitute a valid action of the stockholders without the votes represented by the stock of Emma Donahue. Therefore, if this stock was voted and considered, its withdrawal from consideration by this opinion would not alter the action taken. We have many times stated what amounts to equitable estoppel and have discussed the essential elements, the absence of any one of which is fatal to a plea of equitable estoppel. Texas Co. v. Pettit, 107 Okla. 243, 220 P. 956, and many other Oklahoma cases to be found in American Digest (West) Estoppel, Key No. 52. It is so obvious that more than one of the essentials of equitable estoppel are absent in this case that no particular argument is made thereon. For instance, it is not contended that anyone changed his po-

sition in reliance upon the conduct of Nora Archibald; or that she misrepresented anything or caused anyone any damage by her appearance and participation in the special meeting of the stockholders.

We also have a statutory estoppel, section 9434, O. S. 1931, 15 O.S.A. 75, which provides in effect that any person who accepts the benefits of a contract is bound by its obligations. We are unable to find any application for this section of the statute to the facts under consideration.

The judgment of the trial court is reversed and the cause is remanded, with directions to enter judgment for plaintiffs for "the full amount paid in by him (Emma Donahue) and legal interest thereon, first deducting all charges that may be due on the stock," the amount fixed by statute as being due to a deceased stockholder, and the costs of the action.

CORN, V. C. J., and RILEY, GIBSON, and ARNOLD, JJ., concur. WELCH, C. J., and OSBORN, HURST, and DAVISON, JJ., dissent.