**AMERICAN HOME FIRE ASSUR. CO. OF NEW YORK v. MID–WEST ENTERPRISE CO.**

No. 4176.

United States Court of Appeals
Tenth Circuit.

May 21, 1951.

Rehearing Denied June 18, 1951.

Granville Tomerlin, Oklahoma City, Okl. (Tomerlin & High and Stewart W. Mark, all of Oklahoma City, Okl., on the brief), for appellant.

A. W. Gilliland, Oklahoma City, Okl. (W. R. Withington and George H. Shirk, Oklahoma City, Okl., on the brief), for appellee.

Fred Hansen, First Asst. Atty. Gen., of Oklahoma (Mac Q. Williamson, Atty. Gen., on the brief), for amicus curiae.

Before BRATTON, HUXMAN and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

Mid-West Enterprise Company—hereinafter referred to as owner—owned certain lots with a brick and frame building thereon in Oklahoma City. The building was known as the Folly Theatre, and it was covered by two policies of contributing insurance. One policy was issued by American Home Fire Assurance Company insuring the building against loss or damage by fire to an amount of $18,000. And in consideration of an additional premium paid therefor, the company attached to the policy a rider which provided in effect that in case of fire, the company should also be liable for loss or damage occasioned by the enforcement of any state law or municipal ordinance which necessitated in rebuilding the demolition of any portion of the building not damaged by fire. Another policy—issued by Sentinel Fire Insurance Company—insured the building against loss or damage by fire to the amount of $12,000, and it bore a like rider. On September 24, 1947, while both policies were in force and effect, the building was damaged and in part destroyed by fire. Two days after the fire, the chief of the fire department of the city addressed a communication to the city manager in which he stated that, due to the age and type of material in the building and due to the recent damage by fire and water, he deemed the building hazardous for occupancy as a theatre or any other kind of public gatherings; and he recommended that in the interest of safety the building be reconditioned with fire resisting materials throughout before being again used as a theatre. About three weeks after the fire, the building superintendent addressed a communication to the city manager in which he stated that with the recent fire and the deterioration of the building, it would be unsafe to try to remodel it; and he declared that the building must be replaced throughout with fireproof construction. The city manager transmitted to the owner of the property the communication from the building superintendent. And in the letter of transmittal, the city manager stated that in accordance with the ordinances of the city, the recommendations of the building superintendent must be followed in the event the structure was remodeled or rebuilt. On December 15, 1947, the assistant state fire marshal inspected the premises and issued an order reciting that the building

was in such dilapidated condition by reason of age and want of proper repair that it was especially liable to fire, that it was a real danger to life and property, and that it should be condemned; and by express provision contained in the order, the building was condemned and its razing and removal ordered and directed. On January 6, 1948, the fire marshal issued a new or modified order of condemnation. It recited that the building was in such a deteriorated condition by reason of fire, age, and want of repair that it was especially liable to fire, that it was a real danger to life and property, and that the wooden frame work thereof should be condemned; and by express provision, the building was condemned and the owner was required to wreck, tear down, and remove the building and material from the premises. The owner tore out the mill construction of the building so as to leave only certain portions of the brick walls standing, and constructed on the site a new, fire-proof theatre building, utilizing in such construction the brick walls left standing as covering walls for a portion of the new building. The owner submitted to the two insurance companies proof of loss and statement showing that as the result of the fire and outlays attributable to demolition costs, it had sustained loss in the aggregate amount of $38,940. The aggregate amount of the claim was composed of loss in sound value in the sum of $28,804 and loss attributable to demolition costs in the sum of $10,136. Sentinel Fire Insurance Company paid to the owner $11,521 in settlement of the claim against it. The owner instituted this action against American Home Fire Assurance Company—hereinafter referred to as the insurance company—seeking judgment for the full amount of its policy. The insurance company answered denying liability and tendering certain defenses. The cause was tried to the court without a jury. At the trial, the owner relied upon the second or modified order of the fire marshal as necessitating in rebuilding the demolition of portions of the building not damaged by fire, within the meaning of the rider attached to the policy.

The court entered judgment for the owner for $18,000, together with interest thereon; and the insurance company appealed.

 The judgment is attacked on the ground that Section 317, Title 74, Oklahoma Statutes 1941, violates the due process and equal protection provisions of the Constitution of Oklahoma and the Constitution of the United States; that the second or amended order of condemnation issued by the state fire marshal under authority of the statute was null and void; and that therefore the insurance company was not liable under the rider attached to the policy for expenses incurred by the owner in connection with the demolition of portions of the building not damaged by fire. The statute provides among other things that the state fire marshal, his assistants, the chief of the fire department of any city or town where a fire department is established, the mayor of any city or town where no fire department exists, and the sheriff of any county, upon finding that any building or other structure which for want of proper repair, or by reason of age and dilapidated condition, or for any cause, is especially liable to fire, or is so situated as to endanger other buildings or property, or is so occupied that a fire would endanger persons and property therein, shall order such building or structure to be repaired, torn down, demolished, materials removed, and all dangerous conditions remedied; that the order shall be made against the owner, lessee, agent, or occupant of such building or structure; that such owner, lessee, agent, or occupant shall comply with the order within the time therein fixed; that if the owner, lessee, agent, or occupant deems himself aggrieved by an order of any of such officers and desires a hearing, he may complain or appeal in writing to the state fire marshal; and that the state fire marshal may affirm, modify, revoke, or vacate such order. And the statute makes provision for an appeal from any such order of the state fire marshal to the district court of the county in which the property is situated, and provides that the district court shall hear and deter-

mine the appeal de novo in the same manner as other issues of law and fact are heard and tried in such court. The argument in support of the constitutional invalidity of the statute is that it amounts to an attempt to delegate legislative functions to the fire marshal; that it attempts to delegate power to determine what buildings or structures constitute fire hazards or nuisances of that nature and to order their destruction, without fixing any standard or rule for the guidance of such officer; and that it violates substantive due process in that it necessarily vests in administrative officers arbitrary, capricious, and unreasonable discretionary powers. The statute was enacted in the exercise of the police power of the state to safeguard persons and property against the hazards of fire. The legislature cannot delegate to an administrative tribunal or official arbitrary authority in the administration of a statute. But a statute designed to protect or safeguard persons and property against the hazards of fire must in the very nature of things be somewhat general in its terms as it would be impossible for the legislature to contemplate or enumerate with minute exactness the multitude of varying conditions and circumstances under which buildings or structures would become dangerous as fire hazards. And neither the Constitution of the United States nor that of Oklahoma demands of the legislature the impossible or impracticable in the enactment of a statute of that kind. Neither constitution requires that the legislature find for itself every fact upon which it desires to base legislation of the kind embodied in the statute under consideration or that it make detailed determinations which it has declared to be prerequisite to the application of the legislative policy to particular facts and circumstances. A statute of this nature which declares the policy and legal principles but delegates to an administrative tribunal or official power to ascertain the facts and the inferences therefrom to which the policy and principles apply is not subject to valid constitutional objection for failure to prescribe with sufficient minuteness standards for

its administration. Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834; Bailey v. State Board of Public Affairs, 194 Okl. 495, 153 P.2d 235; Wells v. Childers, 196 Okl. 339, 165 P.2d 358; Ex parte Woodruff, Okl.Cr.App., 210 P.2d 191.

■ Under section 317 the fire marshal is given power to examine buildings and structures for the purpose of determining their condition in respect to constituting fire hazards. And if he finds that a building or structure which for want of proper repair, or by reason of age and dilapidated condition, or for any other cause, is especially liable to fire, or is so situated as to endanger other buildings or property, or is so occupied that a fire would endanger persons and property therein, he is authorized to take action as specified in the statute. The statute empowers him to make affirmative findings of fact in respect to the condition of the building or structure, and if he finds that certain facts and conditions exist, he is authorized to take such action within the framework of the statute as is proper. But his discretion is not unfettered and his action is not unbridled. He is clothed with authority to find the conditions only as they exist, guided by experience and application of ordinary principles of safety for the general public. He is empowered to take only the action prescribed by the statute, when applied to the facts as found. And in the event that his findings of fact are without solid footing, or his final action is improvident, an aggrieved party may seek correction on appeal to the district court of the county in which the property is situated. In People ex rel. Gamber v. Sholem, 294 Ill. 204, 128 N.E. 377, the court held invalid a state statute which was quite similar in substance to the statute of Oklahoma, except that it failed to provide for an appeal or other judicial review of the order of the fire marshal. Although the court held the statute void for failure to provide sufficient standards for its administration, a careful reading of the opinion indicates that the absence of any provision for judicial review of the action of the fire marshal entered largely into the conclusion

reached. And in Lux v. Milwaukee Mechanics' Insurance Co., 322 Mo. 342, 15 S.W.2d 343, 344, the court held invalid an ordinance of the City of Kansas City, Missouri, for the reason that it attempted to clothe the superintendent of buildings with arbitrary discretion in determining that buildings were unsafe and were a nuisance, without fixing any definite standard or rule for his guidance. But that ordinance was substantially different in substance from the statute of Oklahoma. It expressly vested in the superintendent "full discretionary powers of declaring to be a public nuisance, any building, any structure or part thereof that is unsafe as to fire or for the purpose used or has become unsafe from fire, decay or other causes * * *" And it did not provide for judicial review of the action of such official. In wide departure from the statute in Illinois and from the ordinance in Kansas City, the statute in Oklahoma expressly authorizes an appeal to the district court from the final action of the fire marshal, and it expressly provides that the district court shall hear and determine the appeal de novo in the same manner as other issues of law and fact are heard and determined. In the absence of a contrary holding by the courts of Oklahoma, we are clear in the view that the statute is not fatally infirm because it vests in the fire marshal arbitrary, capricious, and unreasonable discretionary powers, without sufficiently fixing standards for his guidance in its administration.

■ The substance of the next contention is that the state fire marshal was without statutory authority to issue the order condemning the theatre building for the reason that the building was located within a city having a home-rule charter. It is argued that the abatement of a fire-hazard nuisance in the form of ordering the destruction of specific property in a particular municipality is a matter purely of local or municipal concern; that in respect to property located in Oklahoma City such power has been confided exclusively to the city; and that the statute is unconstitutional insofar as it is sought to be applied to property within the city. The

city operates under a charter duly adopted in accordance with the provisions of Section 3, Article XVIII, of the Constitution of Oklahoma. And it is well settled in that state that a charter adopted in that manner becomes the organic law of the municipality and supersedes all general laws of the state in conflict with it relating to purely municipality matters. Goodwin v. Oklahoma City, 199 Okl. 26, 182 P.2d 762; Dickinson v. Tidd, 10 Cir., 137 F.2d 610.

■■ In City of Wewoka v. Rodman, 172 Okl. 630, 46 P.2d 334, on which the insurance company places strong reliance, it was held that in a home-rule city the power of removal of members of the fire department is governed by the provisions of the charter rather than by state law. But that case dealt only with the control of the personnel of the fire department. It did not concern itself with the prevention of fire hazards as a means of promoting the safety of persons and property. Similarly, Fossett v. State, 34 Okl.Cr. 106, 245 P. 668, upon which emphasis is placed, did not concern itself in any manner with the prevention of fires in the interest of promoting the safety of persons and property. While it was stated in the opinion that the matter of speed limits, fire limits, fire departments, building construction, sanitary regulations, and similar things are clearly of municipal concern, it was a criminal case in which the defendant was charged under a city ordinance with the offense of vagrancy; and the primary question presented and decided was whether in a case of that kind it was necessary in order to perfect an appeal to the county court to file in the municipal court a written demand for such appeal. In a number of instances, the courts of Oklahoma have had occasion to determine whether a particular kind of governmental activity is purely of local concern and therefore governed exclusively by the charter of a home-rule municipality or is controlled by general law. It has been held that in respect to the election of members of the board of education in home-rule municipalities of certain kinds, the state statute prevails over a provision in the charter, Searcy v.

State, 64 Okl. 257, 167 P. 476; that the fixing of gas rates within a home-rule city is not a matter of such purely municipal concern that it is governed by the municipal charter to the exclusion of state law, City of Bartlesville v. Corporation Commission, 82 Okl. 160, 199 P. 396; that state law controls the rate of wages payable to laborers employed by a home-rule city, State v. Tibbetts, 21 Okl.Cr. 168, 205 P. 776; that the disposition of penalties on delinquent city taxes, including delinquent special assessments for local improvements, is controlled by state law, not a charter provision of the municipality, City of Stillwater·v. Board of County Commissioners of Payne County, 105 Okl. 271, 232 P. 438; that the issuance, sale, and redemption of municipal bonds, and the procedure therefor, are not matters of purely municipal concern, but are of general interest to the state, and that in case of a conflict between general law and the charter of the city the latter must yield, City of Tulsa v. Dabney, 133 Okl. 54, 270 P. 1112; and that control over streets and ways of municipalities is reserved to the state, and that a municipality may not exercise control thereover which is in conflict with state law, Continental Casualty Co. v. Lolley, 193 Okl. 22, 140 P.2d 1014. And this court has held that a home-rule city in the granting of an ordinance for the maintenance of a telephone system must yield to a state statute in respect to the use of the streets in connection with the operation of the system, City of Tulsa v. Southwestern Bell Telephone Co., 10 Cir., 75 F.2d 343, certiorari denied 295 U.S. 744, 55 S.Ct. 656, 79 L.Ed. 1690. Like the prevention and control of certain diseases, prevention of fire may be ineffective without a unified effort extending its reach into cities and towns whether home-rule or otherwise, and into urban and suburban areas. Along with the suppression of crime and the promotion of health, the protection of life and property against the devastations of fire is a primary function of the state. Protection against the hazards of fire is not a matter of local concern. It is one in which the state has a vital interest. We are unable to share the view that section 317 does not have application within a municipality operating under a charter adopted in accordance with section 3, article 18, of the constitution of the state. State v. Cook, 84 Mont. 478, 276 P. 958.

It is argued that the order of condemnation issued by the fire marshal should have been stricken because it was based upon an inspection of the premises which took place at a time when all material evidence of fire damage had been removed by agents and employees of the owner, and that with such order stricken there was no competent evidence tending to show that the fire marshal condemned the building by reason of age, dilapidation, and fire damage; that according to the clear and overwhelming weight of the evidence the theatre building was by reason of age and dilapidation and structural conditions antecedent to the fire in such condition as to justify condemnation by the fire marshal; that the order of condemnation was based upon these grounds alone; that the effects of the fire were not a contributing cause of the order of condemnation; that the order of condemnation was void as against the insurance company because moot, the clear and overwhelming weight of the evidence being that long prior to the inspection on which the order was based the owner had determined upon and was actively engaged in the demolition and destruction of the building; and that the order of the fire marshal was without compulsive effect upon the owner. The trial court found among other things that the fire marshal inspected and examined the building; that as the result of the inspection and examination, the building was condemned and the owner ordered and directed to demolish it; and that pursuant to such order, the owner did demolish the portions of the building not destroyed by fire, except a portion of the outer walls which were constructed of brick. The necessary substance and effect of the argument is that these findings of fact were clearly erroneous. It would not serve any useful purpose to enter into a detailed review of the evidence. It presented sharp conflicts. But a finding

534

of fact made by the trial court is not to be disturbed on appeal unless it is clearly erroneous, due regard being had for the opportunity of the court to observe the demeanor of the witnesses while testifying to appraise their credibility, and to determine the weight to be given to their testimony. Shoemaker v. Leeper, 10 Cir., 186 F.2d 372. A critical examination of the entire record fails to indicate that the findings of fact presently challenged were clearly erroneous, within the meaning of the rule.

■ The question is presented whether the insurable interest of the owner was subject to reduction by reason of the operation of a contract between the owner and the lessee of the premises under which the owner was obligated to destroy certain parts or elements of the building. Almost a year prior to the time of the fire, the owner and the lessee entered into a contract which provided that the owner should effectuate certain alterations and remodeling of the building, and the program contemplated the removal of certain parts or elements of the building as it then existed. But up to the time of the fire no changes, alterations, or remodeling had been done pursuant to the contract. The building stood just as it did at the time of the execution of the contract. The contract did not have the effect of a present sale, alienation, or other diminution of insurable interest in the building. At least until changes were made in fulfilment of the contract, there was no change in the insurable interest of the owner in the building. And the insurance company cannot be heard to say that the contract operated to diminish its liability under the policy. Foley v. Manufacturers' & Builders' Fire Insurance Co., 152 N.Y. 131, 46 N.E. 318, 43 L.R.A. 664; Dubin Paper Co. v. Insurance Co. of North America, 361 Pa. 68, 63 A.2d 85, 8 A.L.R.2d 1393.

Another contention advanced is that at the time of the fire the owner carried insurance against loss by fire in the total amount of $30,000; that the maximum limit of liability for such loss under the policy in suit was $18,000; that the maximum limit of liability under the other policy of concurrent insurance was $12,000; that the company issuing the other policy paid the owner $11,521, in settlement of the claim for the loss; and that after deducting from the loss covered by the two policies the amount paid the owner, the liability under the policy in suit cannot exceed $5,269. The contention is necessarily predicated upon the assumption that under the facts developed at the trial the company is not liable for any amount under the rider attached to the policy. But the assumption is not well founded. Having said in effect that the company is not free from liability under the rider, it is unnecessary to explore this contention.

Other questions are presented. We think that they lack merit and do not call for discussion.

The judgment is affirmed.